**Edgar HARRIS, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

**Civ. A. No. 88–2936.**

United States District Court,
District of Columbia.

April 19, 1990.

---

**10.** Strict compliance by both sides with Local Rule 108(h) is expected.

Carlos M. Recio, Deso & Greenberg, PC, Washington, D.C., for plaintiffs.

Eugene A. Adams, D.C. Corp. Counsel, Washington, D.C., for defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

Plaintiffs are 11 supervisory housing inspectors who work for the municipal government of the District of Columbia. The Court must decide whether or not they are employed in a bona fide executive or administrative capacity under Section 13 of the Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201 *et seq.*

Plaintiffs brought this action against the District government to recover back pay for past overtime. The District of Columbia resists the claim on the ground that plaintiffs are all exempt from the Act's general overtime rule that employees must be paid time-and-a-half when they work more than 40 hours in a week. 29 U.S.C.A. § 207(a). In defendant's view, plaintiffs work in an executive or administrative capacity and thus fit an exception to the overtime rule. 29 U.S.C.A. § 213(a)(1).

Finding defendant's contention unsupported by the facts as brought out in a bench trial, the Court will rule that plaintiffs are neither executive nor administrative employees under FLSA. They thus should be paid overtime as the Act prescribes.

## BACKGROUND

Plaintiffs filed this action October 11, 1988. They seek an order declaring that they are entitled to overtime compensation under FLSA and an award of back pay for all overtime since Congress extended the Act to apply to employees of the city government of the District of Columbia. In March 1989, this Court held that the employees qualified as workers paid on a salary basis, one of the key tests used to decide whether workers are exempt from FLSA overtime requirements. *Harris v. District of Columbia*, 709 F.Supp. 238 (D.D.C.1989). The Court then invited the parties to brief the issue of whether plaintiffs met the other tests for exempt status. In response to the parties' memoranda of law, the Court concluded that it could not rule on a motion for summary judgment because the parties disputed many facts about the nature of plaintiffs' work duties. As a result, the parties agreed to a bench trial held January 24, 1990.

At trial, defendant called Hubert Johnson, Jr. He heads the Building Condemnation Branch of the Housing Inspection Division. The division is one wing of the Housing and Environmental Regulation Administration, which, in turn, is an agency of the Department of Consumer and Regulatory Affairs (DCRA). The Department is one of the District of Columbia's largest government units. Mr. Johnson's branch is one of four in the same division as plaintiffs' branch, but it is not the one that employs plaintiffs. Plaintiffs' counsel called five of

the named plaintiffs in this action, Henry Brooks, Donald Varner, James Ellis, Marva Glenn, and Edgar Harris. They all described their jobs and a typical day's work as a supervisory housing inspector. Additionally, the Court received the transcripts of depositions of Martha Crump and Kateri A.L. Ellison. When deposed, Crump was Chief of the Classification Division for Servicing, Personnel Office Number 2, for the District of Columbia government. Ellison was chief of the Office of Administration and Management in DCRA when deposed. In their depositions, they described the reasons that the position of Supervisory Housing Inspector is considered exempt from FLSA overtime. The parties also offered into evidence position descriptions for the jobs of Housing Inspector and Supervisory Housing Inspector, and of the position the next level above Supervisory Housing Inspector.

### FINDINGS OF FACT

Based upon the evidence before it, the Court will make the following findings of fact.

1. At all times relevant to this action, each plaintiff has held the position of Supervisory Housing Inspector.[1] (Complaint and plaintiffs' testimony.)

2. At all times relevant to this action, defendant has considered each plaintiff Supervisory Housing Inspector to be employed in a bona fide executive capacity as defined by FLSA regulations. FLSA does not require that persons so employed be paid overtime when they work more than 40 hours per week. Although not dwelt on at length in defendant's pleadings, the District of Columbia's evidence contains suggestions that plaintiffs might be exempt as administrative employees. In any event, defendant District of Columbia concedes that it has not, in fact, paid plaintiffs overtime when it would have been due under FLSA. Deft's Proposed Findings of Fact and Conclusions of Law at 2.

3. Most Supervisory Housing Inspectors have a work relationship to a geographic division of the District of Columbia, known as a "unit." These units are numbered, and the number and area of the units roughly correspond to the political wards into which the city is divided. Thus, for example, there is at least one Supervisory Housing Inspector whose work duties largely revolve around Unit One, which is essentially the area that makes up the city's Ward One. At times in the past few years, two Supervisory Housing Inspectors have shared responsibility for a unit.[2]

4. According to the general testimony of the witnesses, a person begins work as a Supervisory Housing Inspector at DS–Grade 9 and may later obtain a DS–10 rating.[3] A Supervisory Housing Inspector may not rise above a DS–10 level, however. Varner testified that the DS–11 grade is reserved for the Branch Chief, and a DS–12 level is filled by the Program Manager.

5. Each plaintiff testified about his or her work background. All had worked their way up from housing inspector, most moving first to assistant supervisory inspector and then to supervisory inspector. Based upon the testimony, the Court finds that Housing Inspectors receive no organized training. Instead, such training as is done consists of accompanying veteran inspectors as they make their rounds. It does not appear that any training occurs

---

1. It appears that since plaintiffs filed this action, several of them have been assigned to duties not normally associated with the position of Supervisory Housing Inspector. Brooks has been working in the records section, looking up building ownership records, filing, and typing. Harris seems to have been put on temporary duty for a year in the professional licenses section where he reviews license applications. Ellis has been working with the Community Relations Branch, where he attends civic meetings and works to teach the public about housing policies.

2. Henry E. Brooks testified that he and another person had been in charge of Unit 7, for example.

3. "DS" grades are the District of Columbia's version of the federal government's "GS," or General Schedule, rankings. Both are schemes of pay and job grade classifications. The lower the DS grade, the lower the job level is.

other than this on-the-job method. Supervisory Housing Inspectors rarely take part in such training. The training lasts only a short time before the new employee is considered able to handle work alone.

6. Supervisory Housing Inspectors similarly have no special training. Nearly all of the witnesses who testified had been Housing Inspectors for ten or more years before being promoted to the supervisory position. This time in the ranks seems to be considered sufficient background to perform the supervisory duties.

7. Supervisory Housing Inspectors with responsibility for a unit normally have reporting to them several housing inspectors who are assigned to their unit. The number varies by unit, and may run from three to eight or more. Plaintiffs testified that they rarely had the full complement of inspectors authorized, because at least a few billets always are unfilled.

8. Those Supervisory Housing Inspectors who head a unit normally begin their workday by meeting with the Housing Inspectors assigned to the unit. The meeting lasts at most two hours. During these meetings the Supervisory Housing Inspectors discuss the work scheduled and review any problems that have arisen.

9. After these meetings are completed, the Housing Inspectors "go into the field," that is, they go out and begin inspecting dwellings. When units are short-handed, which appears to have been the case during most of the past few years, Supervisory Housing Inspectors go into the field and do inspections themselves. Other times, Supervisory Housing Inspectors drive Housing Inspectors to the areas where the latter will work, particularly if the junior inspectors lack transportation. On other occasions, Supervisory Housing Inspectors "go into the field" when an inspection chore is expected to be difficult or sensitive. None of the witnesses could describe what puts an inspection in this class. Generally, Supervisory Housing Inspectors go into the field when their superiors, the Branch Chief and Program Manager, tell them to.

10. Plaintiffs estimated that they spend a quarter of their time working in the field.

11. The witnesses also testified that after the Housing Inspectors go into the field, the Supervisory Housing Inspectors usually remain at the office. Much of their time is spent answering the phones. Most calls are for Housing Inspectors or are citizen complaints. The rest of the day is spent preparing or reviewing reports on housing inspections. Some Supervisory Housing Inspectors perform duties such as tracking "cases" and maintaining case records.

12. Many of the administrative duties described in the previous finding have a largely clerical character. Only one of the Supervisory Housing Inspectors, Harris, has had a personal secretary any time recently. Plaintiffs testified they normally do their own typing, filing, and other clerical work, as well as that generated by the Housing Inspectors in their units.

13. Supervisory Housing Inspectors have no authority to hire or fire their Housing Inspectors. Nor, indeed, does it appear that they may, on their own authority, take any disciplinary action more severe than "verbally counseling" a lower-level employee. ("Verbal counseling" is bureaucratese for correcting an erring employee.) Other than calling a worker up on the carpet, Supervisory Housing Inspectors may only recommend discipline. Although the supervisors may draft a "letter of direction," the letter must be approved by the Branch Chief or Program Manager before it takes effect. In other words, real disciplinary authority is vested in the persons who supervise Supervisory Housing Inspectors. (A "letter of direction" is more severe than "verbal counseling." It is a written order to shape up or be shipped out, doubtless stated less directly. After being delivered, a copy of the letter is put in the employee's personnel file.)

14. However limited the disciplinary power of Supervisory Housing Inspectors may be in theory, it appears to be even more restricted in practice. Witness after witness testified that their superiors had ignored or rejected every suggested act of discipline. Harris testified that he had the best record of any. Of his 20 suggested

disciplinary acts, two have been carried out. The rest of the witnesses testified that their suggestions about discipline carry even less weight.

15. To prove that plaintiffs are properly exempt from FLSA's overtime requirements, defendant District of Columbia elicited testimony about a job duty known as the "Bell–Boy" pager system. Essentially, this is part of the Mayor of the District of Columbia's scheme for trying to maintain control of city services. It appears that the Mayor has an after-hours "command post." D.C. residents desperate enough to need the help of city employees after regular hours may call the "command post." In response to such a call, someone at the "command post" gets in touch with a city employee who has been picked to be responsible for an area of government services during this off-hours period. This designated employee then is supposed to help the complaining citizen.

16. Supervisory Housing Inspectors are sometimes designated as the responsible, after-hours employee when a citizen complains that his residence fails to meet the housing code. For example, such a problem might be the lack of heat during the winter. The duty of responding to such a complaint is pooled among the Supervisory Housing Inspectors so that every few months, one of the Supervisory Housing Inspectors is the "designated" employee for a period of one week. When this happens, a Supervisory Housing Inspector must wear a "Bell–Boy" electronic pager. In other words, the Supervisory Housing Inspector must carry a device that emits a beep or noise when a person at the mayor's "command post" wants to get in touch. When the "Bell–Boy" beeps, the Supervisory Housing Inspector must go to a phone and call the "command post." Such a call usually results in the Supervisory Housing Inspector having to go to a residence and inspect it, generally with an eye to viewing whatever it is that has upset the complaining citizen. When a Supervisory Housing Inspector is "on the Bell–Boy," the employee is on-call 24 hours a day and is expected to respond to a beep from the mayor's command post at any time. When a Super-visory Housing Inspector is on "the Bell–Boy system," he receives no overtime or other extra pay, but instead gets a day of "compensatory time" to be taken off later. If the Supervisory Housing Inspector is "on" during a week when a holiday falls, the employee gets two days off.

17. Plaintiffs and defendant take altogether opposite views about the inference to be drawn from being "on the Bell–Boy." Defendant would have the Court find that this is an indication of plaintiffs' executive status. For their part, plaintiffs suggest that the "Bell–Boy" system shows just how menial their job really is. This is adduced to support the argument that plaintiffs are entitled to overtime.

18. In April 1986, Kateri Ellison reviewed the position of Supervisory Housing Inspector to determine whether it should be deemed to be exempt from overtime under FLSA. She decided that Supervisory Housing Inspectors are exempt because the job meets FLSA's definition of an executive. Ellison Dep. at 7–8. She also concluded that the job did not meet FLSA's definition of an administrative or professional employee. Id. In her deposition, Ellison testified that she was told to decide that any job that had been previously classified as a Supervisor met FLSA's definition of an executive. Id. at 8. She testified further that she did not specifically investigate the duties of a Supervisory Housing Inspector to decide whether they met FLSA's executive category.

19. Martha Crump succeeded Ellison as the employee whose duties included deciding whether Supervisory Housing Inspectors are exempt from FLSA's overtime requirements. In her deposition, Crump specifically stated that Supervisory Housing Inspectors are not considered exempt for the reason that they meet either FLSA's exemption for executive employees or for administrative employees. Crump Dep. at 52–54. Instead, she said that Supervisory Housing Inspectors are deemed exempt because they spend 80% of their time supervising inspection work. Indeed, she ultimately stated that Supervisory Housing In-

spectors do not meet the criteria for the executive or administrative exemptions.

## CONCLUSIONS OF LAW

1. The Fair Labor Standards Act covers employees of the government of the District of Columbia. 29 U.S.C. § 203(c) (1982) ("State" means any state of the United States or the District of Columbia or any Territory or possession of the United States).[4] Section 7(a) of the Act, 29 U.S.C.A. § 207(a) requires that all covered employees be paid not less than one and one-half times their regular rate of pay for any hour worked more than 40 hours in a week.

2. The Act has a series of exemptions from the coverage of its overtime provisions. Section 13(a)(1), 29 U.S.C.A. § 213(a)(1), states that an employer need not pay overtime under Section 7 if an employee works in a "bona fide executive, administrative, or professional capacity." It does not appear that Supervisory Housing Inspectors could colorably fit into an exemption other than for executive or administrative employees; in any event, the District of Columbia has not suggested that they do. Defendant advances only the executive exemption as the basis for not paying Supervisory Housing Inspectors overtime under the Act. Going defendant one better, plaintiffs argue that they meet neither the executive nor the administrative exemption.

3. The cases make clear that defendant has the burden of proving that plaintiffs and other Supervisory Housing Inspectors are exempt. *D'Camera v. District of Columbia*, 693 F.Supp. 1208, 1210 (D.D.C.1988) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974), *Idaho Sheet Metal Works v. Wirtz*, 383 U.S. 190, 209, 86 S.Ct. 737, 748, 15 L.Ed.2d 694 (1966), and *Clark v. J.M. Benson Co.*, 789 F.2d 282, 286 (4th Cir.1986)).

As stated in *D'Camera*, FLSA exemptions are to be construed narrowly against the employers. *Id.* In the end, deciding whether an employee is exempt must be a voyage through fact-bound waters. Although there are a great many stars of law to navigate by, the course turns on the facts of an employee's job duties. Unfortunately for defendant, its position that plaintiffs are exempt is caught between the devil of contrary facts and a deep blue sea of detailed regulations. Frankly, the Court finds it hard to believe that anyone who heard plaintiffs' testimony would conclude that they are executives. Indeed, neither of the two witnesses who opined that plaintiffs are exempt, met with them or reviewed their duties in detail before making a decision about their status under FLSA. The statute, the regulations under it, and the cases confirm this common sense impression.[5]

4. FLSA gives the Secretary of Labor the power to define and delimit the terms bona fide executive or administrative capacity. The Secretary has done so at 29 C.F.R. § 541.1, §§ 541.101–119 (executive) and 29 C.F.R. § 541.2, §§ 541.201–215 (administrative).

The Secretary's regulations at 29 C.F.R. § 541.1 establish a long and a short test of

---

4. This Court earlier stated:

> The coverage of state and local government employees under the Act has had a brief but rich history. After finding that the extension of FLSA coverage to state and local government employees was unconstitutional in *National League of Cities v. Usery*, 426 U.S. 833 [96 S.Ct. 2465, 49 L.Ed.2d 245] (1976), the Supreme Court expressly overruled itself some nine years later in *Garcia v. San Antonio Metropolitan Transit Authority* [469 U.S. 528], 105 S.Ct. 1005 [83 L.Ed.2d 1016] (1985). Following this constitutional clarification, Congress passed legislation that effectively delayed the application of the FLSA's overtime

provisions to states and localities until April 16, 1986. Fair Labor Standards Act Amendments, Pub.L. No. ——, 100 Stat. 999.

*Harris v. District of Columbia*, 709 F.Supp. 238, 239 (D.D.C.1989).

5. Indeed, there is case law dealing just with employees of the District of Columbia. The issues here are not new to counsel for the parties. It appears that they have been fighting similar issues out along these lines for quite some time. *See, e.g., D'Camera v. District of Columbia*, 693 F.Supp. 1208 (D.D.C.1988) and *Wyland v. District of Columbia*, 728 F.Supp. 35 (D.D.C.1990).

whether a worker fits the executive exemption. As relevant here, the long test states that an employee must receive a salary and:

(1) have as a primary duty the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, 29 C.F.R. § 541.1(a); *and*

(2) customarily and regularly direct the work of two or more other employees, § 541.1(b); *and*

(3) have the authority to hire or fire other employees, or to make suggestions and recommendations that are given particular weight in deciding to hire, fire, advance, promote, or change the status of other employees, § 541.1(c); *and*

(4) customarily and regularly exercise discretionary powers § 541.1(d); *and*

(5) "not devote more than 20 percent ... of his hours of work in the workweek to activities which are not directly and closely related" to the above duties, § 541.1(e).

The short test states that someone paid a salary of more than $250 per week with primary duties of managing the employer's enterprise or a sub-unit and directing two or more workers "shall be deemed" to be employed in an executive capacity. 29 C.F.R. § 541.1(f).

5. Under either test, the District of Columbia fails to meet its burden. The District's sole witness, Hubert Johnson, was someone who does not work directly with plaintiffs or in their immediate branch. Although Johnson professed to be familiar with the duties of a Supervisory Housing Inspector, he did not discuss these in detail. The depositions of Ellison and Crump similarly are not helpful to defendant. Ellison undertook no investigation to support the determination that plaintiffs specifically, or Supervisory Housing Inspectors generally, meet the definition of an executive for purposes of FLSA. For all intents and purposes, Ellison followed orders to lump together in the executive class everyone with the word supervisor in their job title. For her part, Crump steadfastly maintained that Supervisory Housing Inspectors are

exempt. But, in turn, she denied that the exemption is based upon employment in an executive, an administrative, or for that matter, a professional capacity. Indeed, from her deposition, it is not clear exactly what statutory exception led Crump to believe that Supervisory Housing Inspectors are exempt. Given this record, the Court would be on firm ground ruling simply that defendant has failed in its proof and be done with it.

Plaintiffs have not let it rest there, however. Their extensive testimony demonstrates conclusively that plaintiffs do not meet the definition of an executive. In their pleadings, plaintiffs also take on the question of the administrative employee exemption, something that defendant did not explore deeply. The Court will treat each in turn.

6. Workers cannot be exempt executives if they spend more than a fifth of their time in activities that produce the output of the unit that they supervise. 29 C.F.R. § 541.115 discusses this:

(a) The primary purpose of the exclusionary language placing a limitation on the amount of nonexempt work is to distinguish between the bona fide executive and the "working" foreman or "working" supervisor who regularly performs "production" work or other work which is unrelated or only remotely related to his supervisory activities.

The Court earlier found that plaintiffs spend more than a quarter of their time doing the same nonexempt work done by Housing Inspectors. This alone removes them from the executive category, even if the rest of their duties are of an executive character.

7. The Court is compelled to conclude further that the time spent at headquarters after the Housing Inspectors go into the field is not exempt executive work. Because this is how plaintiffs spend the bulk of their time, they clearly cannot be employed in a bona fide executive capacity.

In discussing nonexempt work, the regulations further state:

(b) Nonexempt work is easily identifiable where, as in the usual case, it consists of work of the same nature as that performed by the nonexempt subordinates of the "executive." It is more difficult where supervisory employees spend a significant amount of time in activities not performed by any of their subordinates and not consisting of actual supervision and management.

29 C.F.R. § 541.111.

The same rule suggests that when supervisors spend a good deal of time doing work that is not management or supervision but also is not done by their subordinates, a decision that this work is exempt depends on whether the duties: (1) consist primarily of management; (2) regularly direct two or more employees; (3) include the power to hire and fire; and, (4) exercise discretionary power.

8. As described to the Court, the duties of Supervisory Housing Inspectors at best meet only one of these four characteristics. First, 29 C.F.R. § 541.103 suggests that a primary duty is one that a person spends more than 50% of the time performing. From the evidence, it seems that most of a Supervisory Housing Inspector's time is spent in the office performing clerical tasks, maintaining records, and answering the telephones. None of these are management tasks. The evidence further indicates that plaintiffs' role does not entail directing or managing the execution of housing code policy. Not a single piece of evidence suggests that any of the Supervisory Housing Inspectors have ever devised plans or strategies, determined priorities, put together initiatives, or done anything associated with management of a program. The testimony suggests that Supervisory Housing Inspectors react only, whether to direction from the Branch Chief or Program Manager, or to complaints from the public. Nothing in plaintiffs' duties has any "proactive" quality to it, in the sense that word has come to be used to mean anticipating a problem and taking steps to prevent or correct it. In short, Supervisory Housing Inspectors do not manage at all, much less more than 50% of the time.

Second, although plaintiffs' testimony suggests that Supervisory Housing Inspectors in charge of a unit do direct the work of two or more employees, the extent of such direction is unclear. Therefore, this is not enough to save defendant's contention that Supervisory Housing Inspectors are executives, particularly when plaintiffs do not meet the other three criteria.

Third, nothing seems clearer than that those plaintiffs who testified are consistently ignored whenever they propose any disciplinary action. The evidence suggests that plaintiffs' superiors give not a moonbeam's weight to plaintiffs' recommendations. And, of course, ignored or otherwise, these are only recommendations, not the final authority to hire or fire or take other key personnel actions referred to in the regulations.

Last, Supervisory Housing Inspectors do not appear to exercise any degree of discretionary power. Their schedules, and the plan for their subordinates' schedules, are set by the Branch Chief and Program Manager. Plaintiffs' duty seems to be to relay these to the Housing Inspectors, acting as a conduit. All of the testimony shows that Supervisory Housing Inspectors are sharply constrained in their power to act on their own or to do much of anything without higher approval.

9. In short, Supervisory Housing Inspectors are at best working foremen. As such, their duties do not meet the test of employment in a bona fide executive capacity. Similar conclusions about supervisory employees have been sustained elsewhere. *See Brock v. The Norman's Country Market, Inc.*, 835 F.2d 823, 826 (11th Cir.), *cert. denied*, 487 U.S. 1205, 108 S.Ct. 2845, 101 L.Ed.2d 883 (1988) (upholding conclusion that employees classified as department managers did not meet executive exemption); *See also Fire Fighters Local 2141 v. City of Alexandria, Va.*, 720 F.Supp. 1230, 1233 (E.D.Va.1989) (although several types of police sergeants and fire department lieutenants "are in charge of the unit they supervise," when duties examined from "perspective of their role within the entire fire or police department and when factor-

ing in the lesser degree of discretion and autonomy they exercise," they do not meet executive exemption).

10. In conclusion, the Court decides that plaintiffs are not employed in a bona fide executive capacity and cannot be exempt from FLSA overtime requirements on this basis.

11. Plaintiffs also are not exempt as employed in a bona fide administrative capacity. Here again, there is a long and short test, but plaintiffs' duties pass neither. The short test is contained in 29 C.F.R. §§ 541.2(e)(2) and 541.2(a)(1). An employee who earns a salary of more than $250 per week qualifies for the administrative exemption if his primary duty consists of "the performance of office or nonmanual work directly related to management policies or general business operations of his employer ..." *and* the work requires "the exercise of discretion and independent judgment." The meaning of "directly related to management policies or general business operations of his employer" is elaborated upon in 29 C.F.R. § 541.205(c)(2) as follows:

> An employee performing routine clerical duties obviously is not performing work of substantial importance to the management or operation of the business even though he may exercise some measure of discretion and judgment as to the manner in which he performs his clerical tasks.... An inspector, such as for example, an inspector for an insurance company, may cause loss to his employer by the failure to perform his job properly. But such employees, obviously, are not performing work of such substantial importance to the management or operation of the business that it can be said to be "directly related to management policies or general business operations" as that phrase is used in § 541.2.

The Court believes this guidance resolves the issue of whether Supervisory Housing Inspectors meet the definition of an administrative employee. First, the work done while plaintiffs are in the office, which seems to be their primary duty under the regulations, is largely clerical. Second, the

quoted section suggests that inspection work should not be considered directly related to management or general business operations.

12. The long test for an administrative employee has several elements similar to the executive employee. As relevant here, the elements of the long test are that the employee receives a salary and:

> (1) has primary duties consisting of "the performance of office or nonmanual work directly related to management policies or general business operations of his employer ...", 29 C.F.R. § 541.2(a)(1); *and*
>
> (2) customarily and regularly exercises discretion and independent judgment, § 541.2(b); *and*
>
> (3) regularly assists an executive or administrator, or, performs work along specialized or technical lines, or, executes special assignments, § 541(c)(1)–(3); *and*
>
> (4) spends no more than 20% of the time at work in nonexempt activities, that is in non-administrative duties.

Under the short test, the Court decided that Supervisory Housing Inspectors' primary duties failed to meet the first criterion of the long test. Moreover, the Court earlier has concluded that Supervisory Housing Inspectors spend more than 20% of their time in the field doing inspections. 29 C.F.R. § 541.205(a) draws a distinction between "activities relating to the administrative operations of a business as distinguished from 'production'...." In this instance, housing inspections, obviously, are the "production" of the Housing Inspection Branch. Time that Supervisory Housing Inspectors spend inspecting residences is work spent in the "production" of the unit. Under the regulations quoted, this amount of time spent in such production disqualifies plaintiffs from being administrative employees. Similarly, the Court's earlier conclusion that Supervisory Housing Inspectors do not exercise discretion and independent judgment is fatal to the idea that plaintiffs are administrative employees.

Although plaintiffs might arguably be said to assist an executive or other adminis-

trative employee regularly, the fact that their duties meet none of the other criteria means that they cannot be considered to qualify for an administrative exemption as defined in the FLSA regulations. This Court's decision is largely prompted by the specific facts before it, but it is worth noting again that other courts dealing with roughly comparable government supervisory employees have come to similar conclusions. *See D'Camera v. District of Columbia,* 693 F.Supp. 1208, 1211 (D.D.C. 1988) (police patrol sergeants, investigative sergeants, and administrative-specialist sergeants not shown to be employed in bona fide administrative capacity).

13. In conclusion, the Court also decides that Supervisory Housing Inspectors are not employed in a bona fide administrative capacity and cannot be exempt from FLSA overtime requirements on this basis.

14. Plaintiffs also urge the Court to decide that they are not salaried employees and thus cannot be executive or administrative employees regardless of their duties. In the Court's view, it has resolved this issue in its earlier opinion. In any event, the Court considers that it is unnecessary to make a further ruling on the question. Similarly, the Court has not addressed further the issue of the Bell–Boy duty. To the extent that defendant points to the Bell–Boy as either an indication of substantial discretionary power or an indication of the high-level status of a Supervisory Housing Inspector, the Court notes that an employee is on the Bell–Boy system for one week every few months. Even if the Court were to accept defendant's characterization of the Bell–Boy scheme, the short time plaintiffs are on the Bell–Boy cannot by itself change the fundamentally nonexempt nature of a Supervisory Housing Inspector's job as otherwise outlined in the findings of fact and conclusions of law above.

15. There appearing to be no other basis in the record for upholding defendant's classification of plaintiffs' jobs as exempt, the Court rules that defendant has failed in its burden of proving that plaintiffs are exempt from FLSA overtime requirements. The Court therefore concludes that Super-

visory Housing Inspectors are entitled to overtime as prescribed by the Act. An appropriate order accompanies this opinion.

### JUDGMENT AND ORDER

This matter came before the Court at a bench trial of the issue whether plaintiffs are exempt from overtime under Section 13 of the Fair Labor Standards Act, 29 U.S. C.A. § 213(a)(1) and the regulations issued pursuant to it. Upon consideration of the parties memoranda on this issue, the evidence adduced at trial, the entire record herein, and for the reasons in the accompanying memorandum opinion, it is by the Court this 19th day of April

ORDERED, ADJUDGED, and DECREED that plaintiff Supervisory Housing Inspectors are not "employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C.A. § 213(a)(1); and it is further

ORDERED, ADJUDGED, and DECREED that plaintiff Supervisory Housing Inspectors are eligible for overtime as prescribed in the Fair Labor Standards Act, 29 U.S.C.A. §§ 201 *et seq.*