John F. AHERN, et al., Plaintiffs,

v.

The STATE OF NEW YORK, the Division of the New York State Police, and Thomas A. Constantine, as Superintendent of the Division of the New York State Police, Defendants.

Gerald J. LONG, Paul L. Piwinski, Denis J. Donovan, Robert P. Faynor, John J. Tonzi, Donald E. Brandstetter, Douglas C. Field, Individually and on behalf of others similarly situated, Plaintiffs,

v.

Thomas CONSTANTINE, Superintendent New York State Police, New York State Police and the State of New York, Defendants.

John M. MORAN, et al., Plaintiffs,

v.

STATE OF NEW YORK, Defendant.

Lynn MARTIN, Secretary of Labor United States Department of Labor, Plaintiff,

v.

STATE OF NEW YORK, Defendant.

Nos. 89–CV–956, 89–CV–887, 89–CV–1235 and 89–CV–1110.

United States District Court, N.D. New York.

Dec. 8, 1992.

920

Blitman & King (Douglas L. Steele, of counsel), Syracuse, NY, for plaintiffs in No. 89–CV–956.

Michaels & Bell, P.C. (Jan M. Smolak, of counsel), Auburn, NY, for plaintiffs in No. 89–CV–887.

Mulholland & Hickey (Gregory K. McGuillivary, of counsel), Washington, DC, for plaintiffs in No. 89–CV–1235.

Patricia M. Rodenhausen, Regional Sol., U.S. Dept. of Labor (James A. Magenheimer, of counsel), New York City, for plaintiff in No. 89–CV–1110.

Robert Abrams, Atty. Gen., State of N.Y., Dept. of Law (Alan S. Kaufman, Asst. Atty. Gen., of counsel), Albany, NY, for defendants.

## MEMORANDUM

CHOLAKIS, District Judge.

For the convenience of the Court and the parties, this Memorandum addresses the issues in the above-captioned matters. At issue in each case is whether the members of the New York State Police Bureau of Criminal Investigation (BCI) fall within the "administrative or executive employee" exception to the federal Fair Labor Standards Act of 1938 (FLSA), codified as amended at 29 U.S.C. § 201 et seq. Individual members of the BCI (the private plaintiffs) commenced several civil actions against defendant Thomas Constantine in his capacity as Superintendent of the New York State Police, and against the State Police and the State of New York, alleging that the State's failure to pay them overtime violates the FLSA. In addition, the Secretary of Labor has filed suit against the State under the FLSA with respect to the identical practices of the State Police. The private plaintiffs have consolidated their respective motion papers.[1]

Several dichotomies characterize these cases. First, there are two relevant exemptions from the duty to pay overtime that the State claims apply to the cases: the administrative exemption, found at 29 C.F.R. § 541.2, and the executive exemption, found at 29 C.F.R. § 541.1.[2] Second, there are two classes of BCI police officers: "Investigators" and "Senior Investigators." The third dichotomy involves a distinction between the "production" work of the employer (in this case, the State Police) and its "administrative operations." See 29 C.F.R. § 541.205(a) (Secretary's interpretation of administrative exemption).

The Department of Labor uses the production/administration dichotomy to identify which employees fall within the administrative exemption to the FLSA, and which may claim overtime pay.

After extensive discovery, the private plaintiffs and the Secretary of Labor moved for partial summary judgment ultimately to determine whether the State has violated the overtime pay provisions of the FLSA, and more specifically, to determine whether the State may claim the administrative and executive exemptions.[3] Conversely, the State has made a cross-motion for summary judgment, seeking a ruling that the plaintiff BCI members are exempt from overtime provisions of the FLSA, or that applying the Act to the State Police would offend the State's sovereignty, as guaranteed under the Tenth and Eleventh Amendments to the United States Constitution.

### Summary Judgment Standards

When considering a motion for summary judgment, the Court first aims to determine whether any genuine issues of material fact remain such as would justify a trial on the merits. The Court does not resolve factual disputes, but rather identifies them. If the Court concludes that no triable issues of fact remain, the Court will proceed to resolve the controversy by applying the law to the undisputed facts. See FED. R.CIV.P. 56.

The materiality of a fact depends upon the applicable law. In order to assess the materiality of the facts in this case, the Court must look to the regulations defining

---

**1.** The individual plaintiffs in *Long et al. v. Constantine et al.,* No. 89–CV–887, *Ahern et al. v. New York,* No. 89–CV–956, and *Moran et al. v. New York,* No. 89–CV–1235 are jointly pursuing the motion for summary judgment. Similarly, defendants are consolidating their response to these motions for summary judgment with their response to the Secretary of Labor's motion for summary judgment in *Martin v. New York,* No. 89–CV–1110.

**2.** Congress delegated the task of developing the FLSA exemptions to the Secretary of Labor. Courts have upheld this delegation of authority. *See, e.g., Fanelli v. United States Gypsum Co.,* 141 F.2d 216, 218 (2d Cir.1944).

**3.** From the outset, the State has claimed that its Investigators and Senior Investigators fall within the administrative exemption, as defined in 29 C.F.R. § 541.2. More recently, the State has claimed that some of its Senior Investigators also fall within the executive exemption, as defined in 29 C.F.R. § 541.1. The Secretary of Labor moves for summary judgment only on the availability of the administrative exemption for the Investigators; as to the Senior Investigators and the administrative or executive exemptions, the Secretary claims that genuine issues of material fact remain. *See* Secretary's Response in Opposition to Defendant's Cross-Motion for Summary Judgment at 1–2.

the administrative and executive exemptions because Congress has delegated the task of defining and delimiting these exemptions to the Secretary of Labor. 29 U.S.C. § 213(a)(1). Despite the State's voluminous submissions regarding federal compliance with the FLSA, the Court notes that the issue in the present case is the applicability of the exemptions to the Investigators and Senior Investigators of the BCI.[4]

■ The parties' respective burdens also inform the Court's inquiry on a motion for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Under the applicable law, the State—as the party claiming the exemption from the FLSA—bears the burden of proving its entitlement to the exemption. *Martin v. Malcolm Pirnie, Inc.* 949 F.2d 611, 615 (2d Cir.1991). Employees are presumptively entitled to overtime compensation for the hours they work in excess of the statutory maximum. Accordingly, if the State cannot show facts that would justify its claim of an exemption, summary judgment in favor of the plaintiffs would be appropriate. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ...").

Because the State has raised several constitutional objections, it might make sense to address them before engaging in the summary judgment inquiry. A bona fide constitutional impediment to the application of the FLSA would render any factual dispute immaterial. Nevertheless, in light of the longstanding principle that courts must strive to avoid reaching constitutional issues if possible, the Court will first address the plaintiffs' statutory claims before considering, if necessary, the State's Tenth and Eleventh Amendment defenses.

*Statutory and Regulatory Provisions*

At the outset, an evaluation of the applicable law will enable the Court to assess which facts are material, and of those, which are in dispute.

All plaintiffs in this case rely on 29 U.S.C. § 207, which provides for pay at one and one-half times the employee's regular pay rate for each hour that an employee works in excess of the statutory 40 hour workweek.[5] Similarly, the State relies on the exemptions from the overtime provision that Congress authorized the Secretary to "define and delimit" by regulation. *See* 29 U.S.C. § 213(a)(1).[6] These regulations appear at 29 C.F.R. §§ 541.1 and 541.2.

The State claims that all of its Investigators and Senior Investigators are exempt from the overtime provisions under the administrative exemption and that some of the Senior Investigators fall within the executive exemptions from the FLSA.[7]

*Executive Exemption*

The Secretary has defined the executive exemption as follows:

> The term "employee employed in a bona fide executive capacity" in section

---

**4.** The State's generous compilation of information about the labor practices of various federal agencies, including the Department of Labor, serves only to confuse the issues. At most, the State shows that a variety of federal agencies fail to comply with the FLSA. This potential federal non-compliance will not excuse violations of the FLSA elsewhere.

**5.** Section 207(a) provides the general rule that, [N]o employer shall employ any of his employees who in any workweek is engaged in commerce ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a).

**6.** Section 213(a)(1) provides in relevant part:

> The provisions of [29 U.S.C. §§ 206 & 207] shall not apply with respect to—
> (1) any employee employed in a bona fide executive, administrative, or professional capacity ... (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of the Administrative Procedures Act ...)

**7.** The Senior Investigators for whom the State claims the executive exemption are those who "manage a recognized department or unit and supervise two or more employees." *See* Defendants' Memorandum of Law at 131 n. 47.

13(a)(1) of the Act shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily or regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent ... of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week ... *Provided*, That an employee who is compensated on a salary basis at a rate of not less than $250 per week ... and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

29 C.F.R. § 541.1. Because the regulation is written in the conjunctive, an employer must establish that an employee meets each of the requirements before the employer is entitled to claim the exemption.

However, because the BCI Investigators and Senior Investigators earned more than $250 each week during the relevant period, the "short test" found at 29 C.F.R. 541.1(f) applies. *See* Exhibits in Support of Plaintiffs' Motion for Partial Summary Judgment at Exh. 22–23 (compensation tables in collective bargaining agreement). In light of special constraints that attend government employers,[8] the Secretary of Labor does not contest that the BCI members are "salaried" and therefore that the State must meet only the short test. For purposes of this motion, the Court will assume that the short test applies to the determination of both the executive and administrative exemptions.

Thus, under the regulations, the job-related activities of the employees—their primary duties—become material facts. The applicability of the executive exemption depends upon whether the "primary duty" of the Senior Investigators consists of management, rather than investigations. The question of the primary duties of the Senior Investigators is, of course, a question of historical fact.

The Secretary argues that a genuine factual dispute remains because the sworn statements of several BCI Senior Investigators indicate that they spend the majority of their time investigating crimes, as opposed to managing other crime investigators. *See* Exhibits to Plaintiff's Statement in Response to Defendant's Rule 10(J) Statement of Facts (Secretary's response to Defendant's cross-motion). These statements of the Senior Investigators contradict the State's assertion that "the primary duty of a Senior Investigator is supervision and management of the particular unit assigned." Defendants' 10J Statement at ¶ 126. The Superintendent of the State Police affirms that "the primary duty of a

---

**8.** Many governmental employers must, under local statute, deduct amounts from their employees' pay under certain circumstances (e.g. unexcused leave). These deductions, by making it appear that the otherwise-salaried employee receives an hourly wage, might preclude the employee from passing the salary test of 29 C.F.R. § 541.118, and thereby prevent the government employer from claiming the administrative or executive exemption. Responding to this fact, the Secretary of Labor issued regulations in August of this year relaxing the salary test for government employees under some circumstances. *See* Plaintiff's Response in Opposition to Defendant's Cross–Motion for Summary Judgment at 10 n. 4; *see also* Exemptions from the Minimum Wage and Overtime Requirements of the Fair Labor Standards Act; Public Sector Employers, 57 Fed.Reg. 37,666 (1992) (to be codified at 29 C.F.R. § 541.5(d)).

Senior Investigator is supervision and management of the particular unit assigned." Affidavit of Thomas A. Constantine at ¶¶ 58–66. Undoubtedly, there is a factual dispute about the primary duties of the Senior Investigators.

The same factual dispute pervades the private plaintiffs' case with respect to the activities of the Senior Investigators. For example, the private plaintiffs rely on the Deposition of Captain Thomas Fazio for the assertion that Senior Investigators assigned to the Drug Enforcement Task Force spend a majority of their time doing "hands on work," as opposed to managing other Investigators. *See* Fazio Deposition at 25. But Captain Fazio's statements concerning the allocation of the Senior Investigators' activities between investigations and management were indefinite. In response to a question asking him how much time the Senior Investigators spend doing hands-on work, he said only "I would say a major part, but I couldn't give you a percentage ... I'd say the major is more than half. I couldn't give an estimate on it." The statements of Superintendent Constantine, concerning the responsibilities and activities of the Senior Investigators, conflict with the plaintiffs' assertions that Senior Investigators primarily perform hands-on work, as opposed to administrative or supervisory work.

Moreover, some of the submissions that the parties rely on combine data for both Investigators and Senior Investigators. For example, the State Police apparently conducted a time management study which required members of the BCI to fill out a card everyday, indicating the time they expended in each of several categories of activities. The resulting data, however, clumps the responses of the Senior Investigators together with those of the Investigators. This study, therefore, offers no insight into the primary duties of either class of Investigator.

In sum, genuine issues of material fact remain with respect to the activities of the Senior Investigators. Summary judgment, therefore, is not warranted on the issue of the applicability of the executive exemption to the Senior Investigators.

## Administrative Exemption

The State also claims that both its Investigators and Senior Investigators fall within the exemption for administrative employees. The Secretary has defined and delimited the administrative exemption by issuing the following regulation:

The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:

(a) Whose primary duty consists of ...

(1) The performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers ... and

(b) Who customarily and regularly exercises discretion and independent judgment; and

(c)(1) Who regularly and directly assists ... an employee employed in a bona fide executive or administrative capacity, or

(2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or

(3) Who executes under only general supervision special assignments and tasks; and

(d) Who does not devote more than 20 percent ... of his hours worked in a workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and

(e)(1) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week ...

(2) ... Provided, That an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week ... and whose primary duty consists of the performance of work described in paragraph (a) of this section, which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all the requirements of this section.

29 C.F.R. § 541.2. As with the executive exemption, this regulation provides a "short test" that applies to this case, given the weekly salary of the BCI Investigators and Senior Investigators. 29 C.F.R. § 541.2(e)(2).

■ Under the "short test," the State must prove that the employees for whom it claims the administrative exemption primarily perform "office or nonmanual work directly related to management policies or general business operations" of the BCI, and in so doing, exercise discretion and independent judgment.

To aid in the interpretation of these regulations, the Secretary has drawn a distinction between "production" work and "administrative activities." *See* 29 C.F.R. § 541.205(a). Though the Secretary's interpretative regulations are not binding on the Court, they do provide "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

The administrative activities of an enterprise include, for example, advising management, planning, negotiating, representing the company, purchasing, and business research and control. 29 C.F.R. § 541.205(b). The regulation describes administrative work as that performed by "so-called white-collar employees engaged in 'servicing' a business ..." *Id.* Production work, in contrast, is that work which constitutes the primary mission of the enterprise.

The State objects to this production/administration dichotomy, claiming that the distinction is outdated, conceived when manufacturing industries dominated our economy. Further, the State complains that the distinction fails to take into account the structure and function of a modern police organization. In contrast, the

Secretary and several federal courts have found the dichotomy useful in the law enforcement context. For example, the Wage–Hour Administrator at the Department of Labor issued a formal opinion letter in which he opined that a police officer performing duties substantially similar to those of the BCI Investigators would be involved in "production work" and therefore not fall within the administrative exemption.[9]

Judge Louis Oberdorfer, of the United States District Court for the District of Columbia, similarly found that a United States Marshall whose job required him "to apply investigative knowledges [sic], skills, and abilities to conduct investigations of substantial difficulty concerning violations of law ..." fell outside the administrative exemption to the FLSA. *Roney v. United States*, 790 F.Supp. 23, 24 (D.D.C.1992). In so finding, Judge Oberdorfer considered the Secretary's distinction between production work and administrative work in the law enforcement context.

Similarly, three Circuit Courts of Appeals have found the production/administration dichotomy useful in non-manufacturing employment contexts. For example, the Circuit Courts have applied the interpretation to a television station, wholesale electric supply company, and a probation office. *See Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992) (wholesale electric supply); *Dalheim v. KDFW–TV,* 918 F.2d 1220 (5th Cir.1990) (television station); *Bratt v. County of Los Angeles,* 912 F.2d 1066 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 962, 112 L.Ed.2d 1049 (1991) (probation office).

■ Clearly, "the concept of 'production' in 29 C.F.R. § 541.205(a)'s administrative/productive work dichotomy is not to be

---

**9.** The letter described the hypothetical police officer as having,

"primary responsibility for all aspects of the investigation of major crimes, such as homicide, sexual assault, narcotics trafficking, and criminal intelligence gathering. The officer's duties would include, but would not be limited to, analyzing the crime, scene analysis, interviewing witnesses and victims, interrogating suspects, analyzing the relative strength or weakness of a case, and determining whether to file criminal charges."
Opinion Letter of the Wage–Hour Administrator, No. 1583 (WH–529) (Feb. 1, 1988) (found in Addendum to Plaintiff's Partial Summary Judgment Memorandum at Tab 3).

understood as covering only work involving the manufacture of tangibles." *Cooper Elec.*, 940 F.2d at 903. Instead, the distinction that the Secretary's regulation draws is

> between those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market.

*Dalheim,* 918 F.2d at 1230. In the case of the State Police, law enforcement is the service that the enterprise exists to produce.[10] *See* Affidavit of Thomas A. Constantine at ¶¶ 6, 18 (Superintendent's description of mission of State Police and BCI, respectively); N.Y.Exec.Law §§ 216, 223 (defining mission of State Police and BCI). There is no dispute about the mission of the State Police or the BCI.

The Court must evaluate the duties of the Senior Investigators and the Investigators to determine whether these employees have as their primary duty the production of law enforcement services or the administration of the BCI or its units.

As noted above, the facts pertaining to the primary duties of the Senior Investigators are sufficiently muddled to preclude summary judgment for any party.

 The matter is different with respect to the Investigators. The State admits that the "the primary duty of Investigators is to prevent, investigate and detect serious violations of the criminal laws of the State of New York, mostly felonies, and conduct such other investigations as may be provided by law." *Compare* [Private] Plaintiffs' 10J Statement at ¶ 34 *with* Defendants' 10J Statement in Response to Plaintiffs' 10J Statement at ¶ 34. Similarly, the State Police Administrative Manual, which defines the duties of Investigators, confirms that these employees have as their primary duties criminal investigation and law enforcement. *See* New York State Police Manual § 4.8 (found in Exhibits in Support of Plaintiffs' Motion for Partial Summary Judgment as Exh. 8). The State does not dispute that Investigators perform these

tasks, but claims only that the list in § 4.8 is not exhaustive. In short, there is no genuine issue of material fact as to whether the Investigators have as their primary duty the prevention, investigation, and detection of crime. They perform the production work of the State Police; they do not administer the business affairs of that agency.

Applying the regulations and interpretations defining the administrative exemption to the undisputed facts, the Court finds that the BCI Investigators fall outside the administrative exemption. Save for any constitutional objection, partial summary judgment in favor of the plaintiffs is warranted.

Though the State does not dispute that some BCI Investigators worked more than 40 hours each workweek from May 22, 1987 to the present, the record does not adequately show which employees worked in excess of the statutory maximum without receiving "time and a half." *See* Secretary's 10J Statement at ¶ 9 and Defendant's Response to Secretary's 10J Statement at ¶ 9; Private Plaintiffs' 10J Statement at ¶ 64 and Defendants' Response to Private Plaintiffs' 10J Statements at ¶ 64. Of those employees who worked more than 40 hours in a workweek, the State admits that they did not receive compensation at a rate equal to one and one half times the normal rate of pay. *See* Secretary's 10J Statement at ¶ 10 and Defendants' Response at ¶ 10.

Though the record reveals that the State has violated 29 U.S.C. § 207 with respect to some of its BCI Investigators, the Court withholds judgment on the issue of the overtime violations until it can determine, with requisite particularity, the extent and specifics of these violations. The record is not yet ripe for this determination.

### Constitutional Issues

Having concluded that, at least with respect to the BCI Investigators, the State may not avail itself of the administrative exemption, the Court cannot avoid the

---

**10.** Semantically, the formulation is awkward; conceptually, sound.

State's constitutional arguments under the Tenth and Eleventh Amendments.

### 1. Tenth Amendment

■ The Tenth Amendment does not bar Congress from imposing the FLSA upon the New York State Police. Despite some early and perhaps persistent confusion, the Supreme Court has held that the States must comply with the FLSA. *See Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (overruling *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976)).[11]

Notwithstanding Justice Rehnquist's unusual prediction that the *Usery* holding will again capture enough votes on the Supreme Court, *Garcia*, 469 U.S. at 580, 105 S.Ct. at 1033 (Rehnquist dissenting), and notwithstanding the State's current head count of the Justices, *Garcia* remains the law of the land. *New York v. United States*, — U.S. —, —, 112 S.Ct. 2408, 2420, 120 L.Ed.2d 120, 140 (1992) (declining to revisit the holding in *Garcia*). Accordingly, there is no Tenth Amendment bar to applying the FLSA to the New York State Police.

### 2. Eleventh Amendment

■ Nor does the Eleventh Amendment shield the State Police from the burdens of the FLSA. The State asserts the Eleventh Amendment defense with respect to the claims of the private plaintiffs, arguing that Congress has not abrogated the State's immunity and the State has not waived it.

The State correctly points out that the Supreme Court, mindful of State sovereignty in our federal system, refuses to find an abrogation of sovereign immunity unless Congress expresses "its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 243, 105 S.Ct. 3142, 3148, 87 L.Ed.2d 171 (1985); *Dellmuth v. Muth*, 491 U.S. 223, 230, 109 S.Ct. 2397, 2401, 105 L.Ed.2d 181 (1989) (evidence of Congressional intent must be "unequivocal and textual"). The State claims that Congress has not spoken with sufficient precision to abrogate the State's protection against suit in a federal court. This argument lacks merit.

The FLSA expressly authorizes suit against any employer, including a "public agency," for violations of the minimum wage and maximum hour provisions of the statute. 29 U.S.C. §§ 216(b).[12] Congress has defined the term "public agency" to include state governments and agencies. *Id.* § 203(x). In addition, by providing specifically for the calculation of overtime pay for firefighters and law enforcement personnel, Congress clearly and textually manifested its intention that the FLSA applies to state agencies, like the New York State Police. *See, e.g.* 29 U.S.C. §§ 207(k), (*o*), & (p).

Therefore, the Court finds that Congress has unequivocally abrogated the State's Eleventh Amendment immunity.[13]

### *Conclusion and Disposition*

The Court has considered the other arguments that the parties raise and finds it

---

**11.** In *Usery*, the Supreme Court held that subjecting the States to the FLSA offended the Tenth Amendment. Later, in *Garcia*, the high court renounced this view.

**12.** In relevant part, section 216(b) reads:
An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.
29 U.S.C. § 216(b).

**13.** The State claims that the purported abrogation is ineffective because "mere inclusion of the states within statutory definitions has not

been accepted by the Supreme Court as sufficient by itself." *See* Memorandum of Law in Opposition to Plaintiffs' Motions for Summary Judgment at 62–62. This argument, too, must fail. Here, the parenthetical reference to public agencies and the reinforcing definition found at 29 U.S.C. § 203(x) unequivocally abrogate the State's Eleventh Amendment immunity. *Cf. Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 8, 109 S.Ct. 2273, 2277, 105 L.Ed.2d 1 (1989) (the statute's inclusion of States within the definition of "persons" and the plain statement that States are to be considered "owners or operators" together suffice to abrogate sovereign immunity under CERCLA).

928

unnecessary to address them. Having found that the FLSA applies to the State Police and that the State may not claim the administrative exemption with respect to its Investigators, and having rejected the State's constitutional arguments, the Court will grant the plaintiffs' motions for summary judgment with respect to the investigators, and deny the defendants' motions in their entirety. Appropriate orders are attached.