**Robert B. REICH, Secretary of the United States Department of Labor, Plaintiff–Appellee,**

v.

**STATE OF NEW YORK, Defendant–Appellant.**

Gerald J. LONG; Paul L. Piwinski; Denis J. Donovan; Robert P. Faynor; John J. Tonzi; Donald E. Brandstetter; Douglas C. Field, individually and on behalf of others similarly situated; John F. Ahern; William M. Ambler; Daniel J. Arcuri; Norman Ashbarry; Niles J. Balch; Jack R. Baum; Robert L. Boek; Robert T. Bramhall, Sr.; Charles T. Brown; Michael ·D. Byrne; Joel H. Campbell; Thomas P. Canastar; Nicholas A. Cerro; Denis J. Cimbal; Gary J. Corbett; Albert Cukierski; Gary J. Darstein; Dean C. Decker; Orlando M. D'Ella; Dominick DePaola, Jr.; Robert S. Dibble; Dennis P. Dougherty; Daniel D. Evans; Keith R. Fairchild; Russell C. Francis; Emanuel S. Friedman; Robert M. Fritzen; Dominick A. Froio, Jr.; Donald C. Geary; John W. Graham; Douglas E. Herrmann; Stanley A. Jung; Evelyn R. Kendrick; Robert J. Killough; Pascuale D. Lagatta; William L. Lefort; James E. Mathews; Norman J. Mattice; John R. Morlock; Lawrence J. Moylan; Christopher M. Murphy; Richard M. Owens; David Neil Paul; Leland J. Pavlot; Allen D. Piontkowski; Mario J. Restante; Eugene L. Rifenburg; James L. Rogers; Richard J. Sauer; Thomas L. Sears; William D. Slaughter; Douglas B. Smith; Roger W. Sykes; Scott W. Todd; Matthew A. Tynan; Michael Visco; Cornelius R. Walsh, Jr.; Robert D. Warner; Dexter B. Wassall; Stanley E. Weidman; Gerald J. Wendt; Milton A. White; Michael J. Yuzwak; John M. Moran; Christopher G. Allen; Thomas E. Alston, III; Craig Baldwin; Richard O. Bates; Lyle E. Baxter; Donald W. Berberich; Robert L. Beswick; Hugh L. Bigger; Sallie C. Bloomer; Joseph E. Bochnik; Alan T. Brock; Vincent T. Burke; William Caballero; Dennis M. Callahan; William T. Carey; Lawrence

P. Chambers; Garfield Clark, Jr.; John M. Cleary, Jr.; Edward J. Collins; Frank Costa; Paul T. Decillis; Frank J. DeGennaro; Charles J. DePalma; Joseph W. Decker; Donald P. Delaney; James Docherty; Albert J. Drake; Bruce C. Dunning; James P. Aloi; Senior B. Auld; Joseph J. Barrett; Louis A. Battistello; Claus J. Bebensee; Robert J. Berry; Wayne E. Beyea; Daniel E. Bishop; Harold T. Bloomer, III; June M. Bradley; Herman C. Brown, Jr.; Thomas J. Butler; Patrick J. Caffery; Martin A. Card; Kevin D. Cavanagh; Rodger W. Chillemi; Robert F. Cleary; Neil A. Colello; Anthony Coppo; Lennie Daniels; Edward L. DeFisher; Solomon DeJesus; Charles J. Dechon; Louis R. Deltoro; John J. DiPofi; Randolph B. Donaldson; Henry H. Dunn; John P. Dunning; Elkan Eastman; Steven A. Ercole; Preston L. Felton; Stewart F. Field, Jr.; Mark Fischer; Gary F. Forshee; John E. Fuller; Albert G. Gerhart; Stanley R. Glover; Orlando V. Gonzalez; Harold Griffiths; Paul R. Hans; Gregory J. Harlin; Robert A. Hartmann; Robert B. Hayes; Robert Henderson; Russell G. Hicks; Walter T. Holloway; Wayne Huggler; Jorge J. Ibanez–Delgado; Salvatore Indelicatu; Paul T. Johnson; Kenneth T. Jones; George A. Jurak; Paul H. Kelly; Peter L. Kirk; Thomas G. Kleinhans; Anthony S. Kolakoski; George W. Elston; Roger L. Fairchild; David R. Ferringer; Carlos E. Figueroa; Mary E. Fitzpatrick; Charles W. Foster; Robert E. Fuller; Robert F. Giery; David H. Goggin; Gilbert N. Green, Jr.; John J. Grimmke; Jon B. Hansen; Edward C. Hartmann; Paul J. Hasselmann; Stephan A. Hegarty; Thomas K. Herrick; Jerome Holland; Joseph W. Holly; Johannes A. Hurbanek; Juan C. Inclan; Hector M. Jimenez; Douglas W. Johnstone; Lawrence Jonigan; Leonard C. Kasson; John M. Kennedy; Allan W. Kirkwood; Michael A. Klusacek; Charles F. Koran; Eric W. Kruger; Donna L. Lampert; George W. Lawson; Robert H. Lewis; Dominick A. Magro; Thomas D. Manaher; William J. Mante; Donald B. Markert; Charles A. Martin; Edward C. Martinez; John J. McCabe; Terrence P. McCormick; Roberto McFarlane; Thomas H. McHugh; Robert F. McLean; Thomas S. Meehan; Thomas J. Miller; Edward P. Moffe; Robert L. Monroe; William P. Morsheimer; Gregory Mosley; Martin Mulligan; James J. Murphy, Jr.; Stephen Nevins; Thaddeus A. Niksa; John J. Noonan; John O'Brien; John E. O'Keefe; Paul G. Kunar; John G. Lang; Christos G. Lecakes; Steven G. Louder; Issac A. Mallard; Michael T. Manning; David P. Marchitell; Dennis D. Marsh; Harold A. Martin; Robert A. Maurin; Donald T. McConville; John W. McCroary; Richard L. McGee; Charles J. McKenna; Charles J. McLoughlin; Jose A. Mendez; John R. Mitchell; Bruce A. Monforte; Gordon T. Mosher; Terrence F. Mullen; Robert W. Murphy; Reginald A. Nau; James J. Newell; Dennis J. Nolan; Vincent S. Notaro; William L. O'Brien; Terrence P. O'Mara; James P. O'Neill; Stephen J. Oates; John D. Odell; John A. Olquist; Michael Orrego; Ted M. Palmer; Stanley F. Pawelek; Robert R. Phenes; Robert E. Pineau; Edward Raso; George P. Rebhan; Daniel J. Regini; Louis E. Retzer; Jose Rivera; Robert W. Rochler; Michael J. Rogan; Mario A. Romain; Steve M. Sadowski; Paul M. Salvino; Bruce L. Schocken; George J. Schweikart; Richard L. Shearer; John H. Shultis; Roger D. Smith; Luis A. Soto; John P. Spencer, Jr.; Thomas Fred Starace; Roy L. Streever; Thomas M. O'Neill; Richard J. Ocenasek; Robert L. Odell; Richard Olsen; Steven Ortiz; William J. Palmer; Everett H. Pearsall; Kathleen R. Pierino; George C. Pinther; Gerald L. Rauber; Michael S. Reeves; Daniel J. Reidy; James M. Rielly; Robert S. Robles; Louis F. Rodriguez; Richard B. Rogers; Victor P. Rosati; Thomas F. Salmon; Errol I. Sasso; Robert L. Schraff; James Serrano; Lawrence A. Shewark, Jr.; Frederick H. Slanovec; Vincent J. Snyder; Dennis Spanitz; William G. Sprague; Jack S. Stenberg; Paul F. Sweetman; Patrick D. Sylvestre; Gerald

Tiernan; Luis E. Torres; Derek Tudor; Dale A. Valentine; Luis Velez; Kevin W. Walsh; William R. Whalen; Thomas M. Wolf; Henry G. Youngblood; Richard D. Thurston; Jose L. Torres; Thomas C. Tucker; Michael R. Urbanski; John Vandermolen, Jr.; Robert T. Venezia; Donald K. Wentworth, Jr.; Arthur C. Wilson, III; Charles E. Wood; Thomas H. Zimmer, Plaintiffs–Appellees,

v.

Thomas A. CONSTANTINE, as Superintendent of the Division of the New York State Police; Division of the New York State Police; State of New York, Defendants–Appellants.

Nos. 1585, 1586, Dockets 93–6005, 93–7027.

United States Court of Appeals, Second Circuit.

Argued June 2, 1993.

Decided Aug. 23, 1993.

Alan S. Kaufman, Albany, NY (Robert Abrams, Atty. Gen., State of NY, Peter H. Schiff, Deputy Sol. Gen., Albany, NY, of counsel), for defendants-appellants State of NY, Thomas A. Constantine, and Div. of NY State Police.

Paul L. Frieden, Washington, DC (Judith E. Kramer, Monica Gallagher, William J. Stone, U.S. Dept. of Labor, William Kanter, Bruce G. Forrest, Civ. Div., U.S. Dept. of Justice, of counsel), for plaintiff-appellee Secretary of Labor.

Gregory K. McGillivary, Washington, DC (Thomas A. Woodley, Mulholland & Hickey, Washington, DC, Douglas L. Steele, Blitman & King, Syracuse, NY, Jan M. Smolak, Michaels & Bell, Auburn, NY, of counsel), for plaintiffs-appellees Gerald J. Long et al.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Gary L. Sharpe, U.S. Atty., William Kanter, Bruce G. Forrest, Appellate Staff, Civ. Div., Dept. of Justice, submitted a brief on behalf of U.S., as intervenor.

Before: MESKILL and McLAUGHLIN, Circuit Judges, and COVELLO, District Judge.*

McLAUGHLIN, Circuit Judge:

The State of New York appeals from two orders entered in the United States District

---

* The Honorable Alfred V. Covello, United States District Judge for the District of Connecticut, sitting by designation.

Court for the Northern District of New York (Con. J. Cholakis, *J.*) in procedurally separate—but substantively similar—actions brought under the Fair Labor Standards Act ("FLSA"). The pivotal issue in both cases is whether Investigators of the New York State Police Bureau of Criminal Investigation ("BCI") fall within the administrative exemption to the FLSA. 29 U.S.C. § 213(a).

In separate actions, the Secretary of Labor and individual BCI Investigators sued the State of New York under the FLSA, challenging the State's failure to comply with the overtime and recordkeeping provisions of the Act. The State countered that it was under no obligation to pay the FLSA overtime rate to Investigators because they fall within an exemption to the Act for administrative employees. Alternatively, the State protested that the Tenth Amendment barred application of the Act to the BCI, and the Eleventh Amendment barred the relief sought by the private plaintiffs. Rejecting the State's statutory and constitutional arguments, the district court granted summary judgment to the plaintiffs, denied the State's cross-motion for summary judgment, *see Ahern v. New York*, 807 F.Supp. 919 (N.D.N.Y.1992), and entered an order in each action enjoining the State from claiming the administrative exemption as to the Investigators. The State now appeals; and we affirm.

### BACKGROUND

The New York State Police is a division of the State's Executive Department; and provisions governing the State Police are set forth in Article 11 of New York's Executive Law. Executive Law §§ 31(4), 210–29 (McKinney 1993). Section 216 of that Article provides that members of the State Police may be assigned to a bureau of criminal investigation for the purpose of "preventing, investigating and detecting violations of the criminal laws of the state, and conducting such other investigations as may be provided for by law." Executive Law § 216(1) (McKinney 1993). In order of seniority, BCI members are classified as: (1) Captains; (2) Lieutenants; (3) Senior Investigators; and (4) Investigators. *Id.*

There are about 4,000 sworn members of the State Police, and roughly 900 are plainclothes Senior Investigators or Investigators. The remaining 3,100 members constitute the "front line" uniform force of the State Police, 2,400 of whom are classified as State Troopers. The Troopers are the visible, day-to-day presence of the State Police: they drive marked State Police cars and, on a typical day, respond to automobile accidents, conduct road checks, and issue speeding tickets. Troopers also conduct investigations of minor offenses, and conduct preliminary investigations of the more serious crimes. At the scene of a more serious crime, however, a Trooper is required to call in a BCI Investigator. Although Investigators hold the lowest rank within the BCI, they rank superior to Troopers because their BCI rank is comparable to that of a sergeant in the State Police.

Besides supervising Troopers' investigations, BCI Investigators also investigate felonies and major misdemeanors involving organized crime, firearms, narcotics and sex abuse. In that role, BCI Investigators investigate crime scenes, gather evidence, interview witnesses, interrogate and fingerprint suspects, make arrests, conduct surveillance, obtain search warrants, and testify in court. The plaintiffs and the State agree that the "primary duty" of BCI Investigators is the investigation and prevention of serious crimes.

BCI Investigators enjoy broad discretion in the conduct of their investigations, including the decision whether to make an arrest. No doubt, the unpredictable nature of criminal investigations necessitates flexibility in the hours worked by the Investigators. Likewise, the unfortunate abundance and complexity of serious crime in the State occasionally compels a workweek for Investigators in excess of the typical 40 hours. Investigators, however, are not paid overtime at the rate of one and one-half times their regular rate of pay, as is generally required for non-exempt employees covered by the FLSA.[1] 29 U.S.C. § 207(a). In lieu of over-

---

1. In limited instances, Investigators are paid

time-and-one-half pay for certain scheduled over-

time pay, Investigators receive a premium in addition to their salary.

In 1989, three groups representing several hundred BCI Senior Investigators and Investigators sued the State, the State Police and its Superintendent, alleging that the State was in violation of the overtime and recordkeeping provisions of the FLSA. These three actions were consolidated in the district court. The Secretary of Labor also brought suit against the State; but the district court denied the State's motion to consolidate that case with the private plaintiffs' case. By informal agreement among counsel, both the Secretary's action and the private plaintiffs' action were litigated on the same schedule.

The Secretary's action differed in only minor respects from that of the private plaintiffs. The Secretary's complaint sought to enjoin the State from withholding back wages from the Senior Investigators and Investigators and from violating the overtime and recordkeeping provisions of the Act. The private plaintiffs' complaint alleged willful violations of the FLSA and, in addition to the relief sought by the Secretary, sought an award of damages.

In its answer to both complaints, the State contended that: (1) the Investigators were exempt "administrative" employees under the Act; and, (2) the Senior Investigators were exempt under both the "administrative" and "executive" exemptions. 29 U.S.C. § 213(a)(1). The State further defended on constitutional grounds, arguing that: (1) the Tenth Amendment barred the application of the federal overtime provisions to the BCI; and, (2) the Eleventh Amendment barred the award of back pay in the private plaintiffs' action. Both sides moved for partial summary judgment on the exemption issue as to both the Investigators and the Senior Investigators. The State's motion also raised its constitutional defenses.

To determine whether the Investigators and Senior Investigators qualified as exempt administrators or executives under the Act, the district court applied the Secretary of Labor's interpretations of those exemptions found in the regulations promulgated under

time. This is pursuant to their collective bar-

the Act. *See* 29 C.F.R. § 541 *et seq.* (1993). Those regulations mandate a fact-intensive inquiry into the "primary duties" of the employees at issue. *See, e.g.,* 29 C.F.R. § 541.-2(a). Applying these standards to the Senior Investigators, the court found the record "sufficiently muddled to preclude summary judgment" regarding their primary duties. 807 F.Supp. at 926. Accordingly, the exempt status of the Senior Investigators is not before us.

The court found no such factual quagmire, however, regarding the Investigators: their primary duty, the court concluded, was "the prevention, investigation, and detection of crime." 807 F.Supp. at 926. Since no fact issues remained, the court applied the tests set forth in the regulations to the duties of the Investigators to determine whether the administrative exemption applied. It concluded that the State failed to demonstrate that the Investigators were the "administrators" of the BCI. Hence, the FLSA mandated compliance with the overtime provisions of the Act, unless the Constitution stood in the way.

Reaching the constitutional issues, the court found that: (1) the Tenth Amendment was no bar to the application of the FLSA to the BCI; and, (2) the Eleventh Amendment was no impediment to an award of back pay from the State. Accordingly, the court granted plaintiffs' motions for summary judgment and denied defendants' cross-motion.

The State now appeals, renewing the arguments it made to the district court.

## DISCUSSION

### I. *The Administrative Exemption*

 The State, of course, bears the burden of proving that the duties of the BCI Investigators place them within the administrative exemption. *See Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2d Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992). And, consistent with the remedial purposes of the FLSA, we do not give FLSA exemptions generous application.

gaining agreement with the State.

*See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Malcolm Pirnie,* 949 F.2d at 614.

■ The State does not claim that there are issues of fact precluding summary judgment regarding the primary duties of the Investigators. Rather, it challenges only the court's ultimate conclusion that BCI Investigators are not exempt administrators. We review the correctness of that legal determination *de novo. See Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986); *Malcolm Pirnie,* 949 F.2d at 614.

■ Section 7(a)(1) of the FLSA generally requires employers to pay employees at least one and one-half times their regular rate of pay for hours worked beyond 40 per week. 29 U.S.C. § 207(a)(1). Section 13(a)(1) of the Act, however, exempts from this time-and-a-half requirement workers "employed in a bona fide executive, administrative, or professional capacity," as those terms are "defined and delimited from time to time by regulations of the Secretary." 29 U.S.C. § 213(a)(1). Because the statute delegates to the Secretary the authority to define the "administrative" exemption, the Secretary's definition, if reasonable, must be accepted by this Court and given the "force and effect of law." *Batterton v. Francis,* 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977). *See also Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("[L]egislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.").

Pursuant to this grant of power, the Secretary established both a long test and a short test to determine whether an employee qualifies as an "administrative" employee. 29 C.F.R. § 541.2 *et seq.* Which test to apply depends upon whether the employee is paid a salary of at least $250.00 per week; if so, we apply the short test. 29 C.F.R. § 541.2(e)(2). All parties agree that the short test applies to the Investigators.

Under the short test, an "administrative" employee is one whose "primary duty" consists of "office or non-manual work" that: (1) is "directly related to management policies or general business operations" of the employer; and (2) requires "the exercise of discretion and independent judgment[.]" 29 C.F.R. §§ 541.2(a)(1) & (e)(2).

■ To aid our application of this test, the Secretary has also promulgated interpretive regulations. In contrast to the controlling authority given the Secretary's *legislative* rules—i.e., those promulgated pursuant to an express grant of Congressional authority— the respect accorded the Secretary's *interpretive* regulations depends upon their persuasiveness; and we will accept that interpretation to the extent it assists us in applying the statute and the legislative rules. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). *See also Batterton,* 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9; *General Elec. Co. v. Gilbert,* 429 U.S. 125, 140–42, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976).

■ According to the Secretary's interpretative regulations, whether Investigators perform work "directly related to management policies or general business operations" of the BCI turns, in large part, on whether the Investigators perform the "administrative" activities of the BCI, as distinguished from its "production" activities. *See* 29 C.F.R. § 541.205(a). The district court relied upon this production/administrative dichotomy when it ruled that the Investigators were not exempt administrators. We agree.

Without question, the BCI is in the law enforcement "business." *See, e.g.,* Executive Law § 223 (duty of the state police is "to prevent and detect crime and apprehend criminals"); Executive Law § 216 (purpose of the BCI is "preventing, investigating and detecting violations of the criminal laws of the state"). And, it remains undisputed that the primary function of the Investigators within that business is to conduct—or "produce"—its criminal investigations. Investigators do not administer the affairs of that bureau; and the State does not argue that they do. We agree with the district court that the primary activities of the BCI Investigators place them squarely on the "produc-

tion" side of the line. Accordingly, the Investigators do not fall within the administrative exemption to the FLSA; and the State must comply with the overtime provisions of the Act.

The State argues, however, that the district court gave undue weight to the Secretary's interpretative regulations. Specifically, the State maintains that the production/administrative dichotomy is outdated, unsound and unworkable. Essentially, the State's position is that interpretative rules conceived for the manufacturing industry of the 1940s are of no value when classifying employees in state government in the 1990s. On this point, the State emphasizes that state governments were not even subject to the FLSA when these interpretations were drafted. We think the State's argument reflects a misunderstanding of the role these interpretive regulations play in the determination of liability.

■ True, the Secretary's interpretations of the regulations are not entitled to the controlling significance of the legislative regulations themselves. But they are entitled to considerable weight because they constitute a "body of experience and informed judgment to which courts ... may properly resort for guidance." *Skidmore*, 323 U.S. at 140, 65 S.Ct. at 164. *See also Board of Educ. v. Harris*, 622 F.2d 599, 613 (2d Cir.1979), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981). The measure of deference to which they are entitled depends upon their persuasiveness. *See Skidmore*, 323 U.S. at 140, 65 S.Ct. at 164 (weight depends on "all those factors which give it power to persuade, if lacking power to control"). Rejecting an argument comparable to that pressed by the State here, the Fifth Circuit explained:

> To the extent that a district court finds in the interpretations an analogy useful in deciding the case before it, it may rely on the interpretations as persuasive evidence of both Congress's legislative and the Secretary's regulatory intent. At the same time, should a district court find the concepts expressed inapposite to the facts before it, the court is free to engage in its own application of the [exemption] and the pertinent regulations.

*Dalheim v. KDFW–TV*, 918 F.2d 1220, 1228 (5th Cir.1990) (rejecting employer's argument that Secretary's interpretative regulations reflected "'erroneous, outmoded assumptions'" about the TV industry).

■ In this case, the district court found the production worker analogy useful in determining the exempt status of the Investigators. And we agree with its ultimate determination. Hence, even if we were persuaded that the dichotomy lacked persuasive value in this case, we would nevertheless affirm the judgment of the district court. *See Dalheim*, 918 F.2d at 1228 ("whether a district court finds [the interpretive regulations] persuasive is not controlling: if the court's application of the statute and substantive regulations are legally correct and its factfinding is without clear error, there is no basis for reversal on appeal").

■ We are not persuaded, moreover, that these interpretive regulations lack persuasive authority. First, we disagree with the State that the production/administrative dichotomy has limited usefulness outside the manufacturing context. To the contrary, the analogy has repeatedly proven useful to courts in a variety of non-manufacturing settings. *See e.g., Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 903 (3d Cir.1991) (applying analysis to salespersons: "The concept is not limited to manufacturing activities."), *cert. denied*, —— U.S. ——, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992); *Dalheim*, 918 F.2d at 1230 (applying analysis to TV producers: "Section 541.205(a) is not concerned with distinguishing between white collar and blue collar employees, or between service industries and manufacturing industries."); *Gusdonovich v. Business Information Co.*, 705 F.Supp. 262 (W.D.Pa.1985) (applying analysis to insurance claims investigator). Furthermore, courts have demonstrated little difficulty applying the "production worker" analogy to employees in the public sector. *See, e.g., Roney v. United States*, 790 F.Supp. 23 (D.D.C.1992) (applying analysis to deputy U.S. marshals); *Harris v. District of Columbia*, 741 F.Supp. 254 (D.D.C.1990) (applying analysis to housing inspectors). While we

might agree that "analogies between business and government often are somewhat strained, the general principles and rationales underlying the regulations are instructive in a government context." *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir.1990) (applying analysis to probation officers), *cert. denied*, 498 U.S. 1086, 111 S.Ct. 962, 112 L.Ed.2d 1049 (1991). Accordingly, the district court did not err when it relied upon these interpretive regulations to arrive at its conclusion.

The State next argues, in the alternative, that even if the production/administrative dichotomy is a valid interpretation of the administrative exemption and the legislative regulations, the district court erred when it found the Investigators to be the production workers of the BCI. On this point, the State emphasizes the broad discretion enjoyed by the Investigators in the conduct of investigations. If any members of the State Police should be classified as its "production workers," the State believes, it is the Troopers. We find these arguments unpersuasive, as they do not address themselves to the relevant inquiry: i.e., the relationship of the Investigators to the management policies or general business operations of the BCI and the State Police.

█ Finally, the State contends that the Investigators should not be entitled to time-and-a-half because overtime work is "inherent" in the nature of their work. The State labors to convince us that forcing it to pay the Investigators FLSA overtime rates will impede the State's ability to fight crime. While we recognize that a straight overtime compensation system may affect the flexibility and effectiveness of the BCI, it is not our province to decide what constitutes sound policy for the State Police. Our function is limited to deciding the narrow question of whether the function of the BCI investigators places them within the scope of the administrative exemption to the FLSA. The State, of course, remains free to invoke the political processes to convince Congress and the Secretary of the correctness of its views.

In sum, we conclude that the Investigators are not exempt from the coverage of the FLSA.

## II. *The Constitutional Arguments*

### A. The Tenth Amendment

█ Despite the Supreme Court's holding in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the State's first constitutional argument is that the Tenth Amendment precludes application of the FLSA to the BCI. In a challenge to the application of the FLSA to a state agency, *Garcia* held that the Tenth Amendment contains no substantive limitation on the power of Congress to regulate commerce. *Id.* at 552, 105 S.Ct. at 1018. *See also South Carolina v. Baker*, 485 U.S. 505, 512, 108 S.Ct. 1355, 1360, 99 L.Ed.2d 592 (1988). Rather, after *Garcia* the "States must find their protection from congressional regulation through the national political process, not through judicially defined spheres of unregulable state activity." *Baker*, 485 U.S. at 512, 108 S.Ct. at 1360. In short, the Tenth Amendment is not implicated where, as here, the State "has not even alleged that it was deprived of any right to participate in the national political process or that it was singled out in a way that left it politically isolated and powerless." *Baker*, 485 U.S. at 513, 108 S.Ct. at 1361.

The State maintains, however, that *Garcia* is not the last word on the Tenth Amendment, and that the Court's subsequent decision in *Gregory v. Ashcroft*, —— U.S. ——, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), compels a contrary conclusion. We do not agree. Nothing in *Gregory* resurrects the substantive Tenth Amendment limitations interred by *Garcia*. Rather, *Gregory* merely counsels that, out of respect for state sovereignty, we should not interpret a federal statute in such a way as "would upset the usual constitutional balance of federal and state power," at least absent a clear statement of intent to do so in the statute itself. —— U.S. at ——, 111 S.Ct. at 2401. *Gregory*'s plain statement rule does not suggest a different conclusion in this case.

Here, a requirement that the State pay overtime to BCI Investigators is not so intrusive as to strike at " 'the heart of representa-

tive government.'" *Gregory*, —— U.S. at ——, 111 S.Ct. at 2401 (quoting *Sugarman v. Dougall*, 413 U.S. 634, 647, 93 S.Ct. 2842, 2850, 37 L.Ed.2d 853 (1973)). And, even if it were, we note that Congress's intent to apply the FLSA to state law enforcement agencies such as the BCI is unmistakably clear. *See* 29 U.S.C. § 207(k) (referring specifically to employees engaged in "law enforcement activities" for state and local governments). Accordingly, *Gregory* is inapposite.

## B. The Eleventh Amendment

▐�beem We also reject the State's Eleventh Amendment argument. The Eleventh Amendment safeguards the sovereign immunity of the states by limiting the power of Article III courts over actions brought against a state. Absent a waiver of that immunity by the state, or an abrogation of that immunity by Congress, a federal court may not entertain a citizen's suit against a state. *See Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304–06, 110 S.Ct. 1868, 1872–73, 109 L.Ed.2d 264 (1990). The test for determining whether Congress abrogated state sovereign immunity is a demanding one: "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985). *See also Dellmuth v. Muth*, 491 U.S. 223, 230, 109 S.Ct. 2397, 2401, 105 L.Ed.2d 181 (1989) ("[E]vidence of congressional intent must be both unequivocal and textual."). The district court held that in the FLSA Congress abrogated the State's immunity. We agree.

The State asks us to hold, as the Supreme Court did in *Employees v. Missouri Department of Public Health & Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), that Congress's intent to abrogate sovereign immunity is not sufficiently clear in the FLSA. In that case, the Court focused on section 16(b) of the statute,[2] and observed:

> It would also be surprising in the present case to infer that Congress deprived Missouri of her constitutional immunity without changing the old 16(b) under which she could not be sued or indicating in some way by clear language that the constitutional immunity was swept away. It is not easy to infer that Congress in legislating pursuant to the Commerce Clause, which has grown to vast proportions in its applications, desired silently to deprive the States of an immunity they have long enjoyed under another part of the Constitution.

*Id.* at 285, 93 S.Ct. at 1618. Since *Employees*, however, Congress has not remained silent.

In 1974, Congress amended the very statute found deficient in *Employees* to include "public agenc[ies]" within the scope of employers subject to suit under the Act.[3] The Act defined "public agency" to include "the government of a State or political subdivision thereof." 29 U.S.C. § 203(x). Hence, it is clear that Congress amended section 16(b) with the intent that states and their political subdivisions would thereafter be subject to suit in federal court for violations of the FLSA. *See Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 8–11, 109 S.Ct. 2273, 2277–79, 105 L.Ed.2d 1 (1989) (amendments to CERCLA designed to bring states and their subdivisions within the reach of the Act was sufficient to abrogate sovereign immunity). Further, in 1985 Congress again amended the Act, in part to alleviate the financial burdens that would befall states and their political subdivisions in the wake of *Garcia*. *See* Fair Labor Standards Amendments of 1985, Pub.L. No. 99–150, 99 Stat. 787 (1985). *See generally* S.Rep. No. 159, 99th Cong., 1st Sess. 2 (1985), *reprinted in*, 1985 U.S.C.C.A.N. 651, 655 ("it is essential that

---

2. In 1973, section 16(b) of the Act read, in relevant part:

 Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

 29 U.S.C. § 216(b) (1970).

3. The 1974 amendment to section 16(b) replaced the language "maintained in any court" with "maintained against any employer (*including a public agency*) in any *Federal* or State court." 29 U.S.C. § 216(b) (Supp.1976) (emphasis added).

the particular needs and circumstances of the States and their political subdivisions be carefully weighed and fairly accommodated" in light of *Garcia*). Accordingly, we find that Congress has made its intent to abrogate the states' sovereign immunity abundantly clear in the language of the FLSA, as amended in 1974 and 1985. *Accord Hale v. Arizona,* 993 F.2d 1387, 1391–92 (9th Cir. 1993) (en banc); *Spencer v. Auditor of Public Accounts,* 705 F.Supp. 340, 343 (E.D.Ky. 1989); *contra American Federation of State, County & Municipal Employees, etc. v. Corrections Dep't of New Mexico,* 783 F.Supp. 1320, 1323 (D.N.M.1992) (Congress's intent to abrogate immunity under FLSA not sufficiently clear). The State's Eleventh Amendment challenge, therefore, must fail.

## CONCLUSION

We have considered the State's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is affirmed.