Robert B. **REICH,** Secretary of Labor, United States Department of Labor, Plaintiff,

v.

**CHICAGO TITLE INSURANCE COMPANY,** Defendant.

No. 93–2309–KHV.

United States District Court, D. Kansas.

May 19, 1994.

Malinda B. Schoeb, Mary D. Wright, U.S. Dept. of Labor, Office of the Solicitor, Kansas City, KS, Jamison Poindexter Milford, Michael A. Stabler, U.S. Dept. of Labor, Office of the Solicitor, Kansas City, MO, for plaintiff.

Frank W. Lipsman, Eugene F. DeShazo, Smith, Gill, Fisher & Butts, Kansas City, MO, Benton J. Mathis, Jr., Peter H. Schmidt,

II, Drew, Eckl & Farnham, Atlanta, GA, for defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on *Defendant's Motion for Summary Judgment* (Doc. # 92), *Plaintiff's Motion for Partial Summary Judgment* (Doc. # 98), and *Plaintiff's Motion to Strike Affidavits* (Doc. # 114). This case involves the overtime requirements and exemptions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 207(a), 213(a)(1). At issue in the cross-motions for summary judgment are whether Chicago Title's branch managers are exempt "executive" employees and whether Chicago Title's escrow closers are exempt "administrative" or "outside sales" employees. The Department of Labor ("DOL") directs its motion to strike at certain affidavits submitted in support of Chicago Title's motion for summary judgment.

■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court considers all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The nonmoving party, however, "may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). To this end, the Court must identify—but not resolve—facts which are both material and genuinely in dispute and which might compel or preclude the entry of judgment as a matter of law.

In this case, the material facts center around the duties of Chicago Title's escrow closers. Despite the inability of the parties to agree on the characterization of those duties, the Court finds that escrow closers' duties about which the parties agree direct the conclusion that the escrow closers are not exempt from the FLSA's overtime requirements. In that regard, the Court identifies no genuine dispute as to any material fact.

### I. *Background*

Chicago Title Insurance Company is a corporation engaged in the business of insuring title for real property. Chicago Title's main office for the Kansas City metropolitan area is located in downtown Kansas City and houses, among other things, Chicago Title's commercial escrow closing operations. In addition, Chicago Title has branch offices located throughout the metropolitan area. Among those, Chicago Title operates fourteen branch residential closing offices in the Kansas City metropolitan area. Six of those offices are located in Missouri; the other seven offices are located in Kansas. Three types of employees may be found in the branch residential closing offices: a branch manager-escrow; escrow closers; and escrow assistants. The escrow closers report directly to their respective branch managers, who in turn report to the manager in charge of all Kansas City operations, Kathryn Sartin.

Chicago Title's first contact with a customer generally is through its residential or commercial closing departments. An escrow closer is responsible for managing an escrow file from the date of deposit until closing. Residential escrow closers perform some or all of a variety of tasks:

Escrow closers have direct contact with the Company's customers and forward the requests for title insurance from the customers. The closer quotes the fee for title insurance. The escrow closer also responds to pertinent questions which may arise through the closing transaction. The closer prepares the buyer's and seller's closing statements and insures that all closing documents are properly prepared. The closer sets up a closing appointment, and follows up with the customers to insure that the transaction is progressing to completion. The closer supervises the execution of the closing documents and pre-

pares the closing statements. The closer receives and receipts money from the buyer and examines the closing file to insure that the lending agent's requirements have been satisfied. The closer orders the loan check, updates the closing file and determines the appropriate tax payoff. The closer receives and disburses the loan funds from the lending agent. The closer's duties include maintaining the file for release of liens and, if a payoff has been ordered, reviewing the file to insure that all money has been disbursed and taxes have been paid. Upon closure of the file, the closer disburses all funds to seller, lender, realtor and other appropriate parties. Finally, the closer provides the recorded deed and title policy to the buyer and follows-up with the Company's customer. As part of the above process, the closer also conducts a closing conference in almost all instances.

The closer sends out recording packages, returns loan packages to the lenders, orders payoffs, orders termite inspections, checks on home association dues, types contracts, returns recorded documents to lenders, to sellers and to buyers, and sends other documents, such as releases, to be recorded.

Pl.'s Br.Supp.Mot.Partial Summ.J., at 4–5; see also Pretrial Order (Doc. # 89), at 9–11. Commercial escrow closers perform duties similar to residential escrow closers, but in the context of a commercial real estate transaction.

In handling escrow files, Chicago Title escrow closers have access to various guidelines and manuals, including (1) the Settlement Services Guide; (2) standard sample files and legal forms; (3) the Closer Training Manual; and (4) an Underwriting Guide.[1] A typical closer in the Kansas City area handles approximately 700 closings per year. At the branch residential closing offices, the branch manager also oversees the daily operations of that office. Escrow assistants perform specific tasks assigned by an escrow closer, such as taking orders, typing commu-

nications, helping with phone calls, setting up appointments, and preparing checks.

Chicago Title's escrow closers are paid on a salary basis, with the salaries of residential escrow closers typically ranging from $20,000 to $30,000 per year and the salaries of commercial escrow closers typically ranging from $30,000 to $37,000 per year. In addition, the escrow closers are eligible for an incentive bonus if they accumulate "credits" in excess of those set forth as the threshold for participation pursuant to a written incentive plan. Depending on salary level and experience, an escrow closer's participation threshold might increase if he or she utilizes the services of a processor, and earned credits are deducted when certain problems arise with respect to that closing file, such as the filing of a claim or an overdraft. Over the course of a year, some residential closers have earned incentive payments in excess of $10,000.

The Department of Labor ("DOL") originally sought FLSA redress on behalf of all of Chicago Title's branch managers and escrow closers located in the Kansas City area. Chicago Title moves for summary judgment with respect to the FLSA status of both categories of employees, contending that its escrow closers are exempt "administrative" or "outside sales" employees and that its branch managers are exempt "executive" employees. In its motion for partial summary judgment, the DOL addresses only the FLSA status of the escrow closers, contending that the undisputed facts establish that Chicago Title's escrow closers do not qualify for the administrative employee exemption.

## II. Administrative Exemption

The Fair Labor Standards Act ("FLSA") sets forth the general requirement that workers receive overtime compensation for hours worked in excess of forty per week. 29 U.S.C. § 207. Those overtime requirements, however, do not apply to persons employed in a bona fide administrative capacity. Id. § 213(a)(1). The employer asserting an FLSA exemption bears the burden of proof. See Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 206, 86 S.Ct. 737,

---

1. The parties agree that these resources exist, but dispute the frequency and manner in which closers refer to them.

747, 15 L.Ed.2d 694 (1966). Exemptions to the FLSA are to be narrowly construed, *Reich v. Wyoming*, 993 F.2d 739, 741 (10th Cir.1993), with their application limited to employees who are "plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *see also Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992).[2]

The regulations establish two tests for determining whether an employee falls within the administrative exemption: the long test and the short test. Because the employees in question earn in excess of $250 per week, the short test governs this case.[3] Under the short test, an employee is deemed exempt if his "primary duty consists of ... the performance of office or nonmanual work directly related to management policies or general business operations of the employer or the employer's customers ... where the performance of such primary duty includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.214(a) (1993); *see also id.* § 541.2(e)(2).

The interpretive regulations provide as follows:

The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work. In addition to describing the types of activities, the phrase limits the exemption to person who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

29 C.F.R. § 541.205(a).[4] The regulations thus direct two separate inquiries: (1) is the employee's primary duty administrative or production? and (2) is the employee's work of substantial importance? Because the Court finds that Chicago Title's reliance on the administrative exemption fails at this stage of the analysis, the Court does not address whether the work of the escrow closers includes work requiring the exercise of discretion and independent judgment.[5]

1. *Administrative/Production:*

The regulations provide that exempt administrative operations "include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for

---

2. Prior decisions within the Tenth Circuit have superimposed these standards, stating that the employer who asserts this exemption must establish the elements of the administrative exemption by clear and affirmative evidence. *See, e.g., Donovan v. United Video, Inc.*, 725 F.2d 577, 581 (10th Cir.1984); *Ackley v. Dep't of Corrections*, 844 F.Supp. 680, 685 (D.Kan.1994); *Hills v. Western Paper Co.*, 825 F.Supp. 936, 937 (D.Kan. 1993). A quick glance at the decisions underlying this hybrid test, however, confirms that it is merely a different articulation of the same preponderance of the evidence standard, as applied to a remedial statute which is to be narrowly construed. *See Walling v. General Indus. Co.*, 330 U.S. 545, 548–49, 67 S.Ct. 883, 884–85, 91 L.Ed. 1088 (1947); *Legg v. Rock Prods. Mfg. Corp.*, 309 F.2d 172, 174 (10th Cir.1962). To the extent that the Tenth Circuit intended the clear and affirmative evidence language to impose a more exacting standard on the employer, the outcome of this case obviously would not differ.

3. The DOL concedes that the escrow closers earn in excess of $250.00 per week and do not challenge any other aspect of the "salary" requirement under the administrative exemption.

4. While their terminology often sounds odd outside of a manufacturing context, the regulations have withstood numerous challenges to their usefulness and applicability to so-called "white collar" occupations. *See Reich v. New York*, 3 F.3d 581, 589 (2d Cir.1993) (police investigators), *cert. denied*, —— U.S. ——, 114 S.Ct. 1187, 127 L.Ed.2d 537 (1994); *Cooper Elec.*, 940 F.2d at 903–04 (inside salespersons); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir.1990). This court also finds the interpretive regulations persuasive and will apply them accordingly.

5. In moving for summary judgment, the DOL also relies upon the "directly related" prong and elects not to address the element of discretion and judgment. In its cross-motion for summary judgment, Chicago Title repeatedly states that the DOL has conceded that the primary duty of the escrow closers includes work requiring the exercise of discretion and independent judgment. The Court thus feels it necessary to emphasize that it does not address these points solely because it finds the other elements dispositive, and not as an implicit resolution of their merits.

example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 29 C.F.R. § 541.205(b) (1993). Although the regulations clearly exclude production work from the scope of these administrative operations, they do not directly define what constitutes production work. This Court agrees with the Fifth Circuit's common sense approach, which explains that "[t]he distinction § 541.205(a) draws is between those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market." *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1230 (5th Cir.1990); *see also Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990) (test is whether workers engaged in running the business or carrying out its day-to-day affairs), *cert. denied*, 498 U.S. 1086, 111 S.Ct. 962, 112 L.Ed.2d 1049 (1991). This analytical framework focuses not on the color of the employee's "collar" or whether the job is performed in an office or a factory, but on the nature of the work itself. *See Reich v. New York*, 3 F.3d at 588–89 (police investigators); *Cooper Elec.*, 940 F.2d at 904 (inside salespersons); *Dalheim*, 918 F.2d at 1231 (television news producers); *Donovan*, 725 F.2d at 583 (microwave system engineers); *Fleming v. Carpenters/Contractors Cooperation Committee*, 834 F.Supp. 323, 328 (S.D.Cal.1993) (field investigators). The Court therefore examines the duties of the escrow closers to determine whether they carry out Chicago Title's day-to-day opera-

tions—and thus produce a Chicago Title commodity—or whether they administer the business affairs of Chicago Title, its customers, or any relevant departmental subdivision thereof.

■ Based on the duties which the escrow closers undisputedly perform,[6] it is clear that the primary duty of the escrow closers is to carry out Chicago Title's day-to-day closing operations.[7] Although in this case Chicago Title emphasizes its identity as a title insurer, it is beyond question that Chicago Title is in the escrow closing business, and its self-declared status as a title insurer does not alter the fact that escrow closings are a very real product of Chicago Title, which it markets and sells separate from and in conjunction with its overall title insurance operations.[8]

■ The Court is equally unmoved by the contention that the escrow closers cannot be production workers because Chicago Title already has a "production department" which is engaged in examining titles and preparing real estate title policies. An employer cannot limit its FLSA exposure simply by designating a particular class of employees as its production workers. The *relevant* inquiry is the relationship of the employees to the management policies and general business operations of the employer, not the company's label or whether one group of workers falls more neatly within an FLSA category than another group. Just as it was irrelevant to the status of the investigators in *Reich* that state troopers appeared to constitute the clearest case of production workers amongst the entire police force, *see Reich*, 3 F.3d at

**6.** Chicago Title admits that its escrow closers perform the previously identified closing duties, but claims that the list is not exhaustive. Chicago Title does not controvert those duties, however, just by claiming that they are not exhaustive. *See Ahern v. New York*, 807 F.Supp. 919, 926 (N.D.N.Y.1992), *aff'd, Reich v. New York*, 3 F.3d 581 (2d Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1187, 127 L.Ed.2d 537 (1994).

**7.** "As a 'rule of thumb,' an employee's 'primary duty' means that duty which occupies the major part, or more than fifty percent, of an employee's time." *United Video*, 725 F.2d at 581; *see* 29 C.F.R. § 541.103 (1993). Employees who spend less than fifty percent of their time performing

exempt work may still have that exempt work as their primary duty, however, if "other pertinent factors support such a conclusion." 29 C.F.R. § 541.103 (1993); *see Hills*, 825 F.Supp. at 938–39 (accounting and credit manager had administrative duties as her primary duty even though she spent over fifty percent of her time performing clerical and bookkeeping tasks).

**8.** Chicago Title charges $150.00 for closing services when the customer also purchases title insurance, $200.00 when purchased separately. According to Chicago Title's 1993 records, its Kansas City Metro area residential escrow closers performed 17,535 closings that year, generating $2,520,399.00 in revenue.

589, it is likewise irrelevant that Chicago Title employs persons in what *it* deems a "production" department. Moreover, such an argument assumes that "production" employees are the exception while "administrative" employees are the rule. To the contrary, exemptions to the FLSA are to be narrowly construed.

■ Finally, the Court rejects Chicago Title's attempt to meet the elements of the exemption by having its employees and customers recite the legal standards in their affidavits.[9] At the most general level, for example, Chicago Title includes in its statement of undisputed facts Carol Carter's assertion that "[t]hroughout the closing process, Escrow Closers facilitate and participate in activities which are directly related to the management policies and business operations of the company and its customers." This opinion is irrelevant, however, to the Court's analysis of the *duties* that escrow closers perform. It is equally insufficient for Chicago Title affiants to assert that escrow closers "establish policy and procedure for both Chicago Title and its customers" through their handling of escrow files and administration of closing services, particularly when the record demonstrates that, at most, escrow closers apply existing policies and procedures on a case-by-case basis.[10]

Along similar lines, Chicago Title argues that its escrow closers are administrative workers because they are engaged in "servicing" its title insurance business. Indeed, Chicago Title's statement of undisputed facts break down into subheadings titled "advising management," "negotiation," "representing the company," "promoting sales," "business research and control," "scheduling," and "coordinating data." Again, these contentions parade legal conclusions as statements of fact. For example, Chicago Title argues that its escrow closers are not production workers because they "advise" and "negotiate," but appears to make this argument in a world where "advise" is synonymous with "inform" and "negotiate" is synonymous with "request." According to fact statement # 53, for instance, "[w]hen a new file or order is received from a Chicago Title customer, the Escrow Closer, depending on the customer, *advises* them of various services Chicago Title can provide." Although these may be recognized usages of those words, the court is confident that Congress and the FLSA have something different in mind.

In *Bratt,* for example, the Ninth Circuit rejected an argument that probations officers "advised" the management of their county employer by conducting factual investigations and advising the court of a proper sentence

9. Chicago Title submits 122 statements of undisputed "facts," spanning the first 77 pages of its motion for summary judgment. Chicago Title's support for these statements consists primarily of affidavits executed by Carol Carter, Chicago Title's present Assistant Vice President–Sales and Metro Marketing Manager for the Kansas City metropolitan area, by individual escrow closers, and by various Chicago Title customers. All of these affidavits conclude with and consist primarily of the affiant's recitation that he or she has "read pages 1 to 77 of the Statement of Material Facts not in dispute" and that they "are true and correct to the best of my personal knowledge and belief." Thus, Chicago Title's support for the great majority of its statements of undisputed fact comes from an affiant's statement that he or she has read the passage at issue and considers it true.

These affidavits are the subject of the DOL's motion to strike, which attacks their sufficiency under Fed.R.Civ.P. 56(e) as based on belief—and not personal knowledge—and as conclusory and argumentative. The Court need not scrutinize the manner in which the affiants have sworn to their affidavits, however, because the Court agrees that much of each affidavit is irrelevant. "The affidavit is no place for ultimate facts and conclusions of law, nor for argument of the party's cause. But if the affidavit contains relevant material facts, although these are intermingled with conclusions of law, the court may disregard the conclusions of law and consider the rest of the affidavit." 6 Part 2, James W. Moore et al., *Moore's Federal Practice* ¶ 56–22[1], at 56–746 to –49 (1993). Disregarding the irrelevant material, the Court is satisfied of the affiants' personal knowledge of the remaining contents.

10. Ironically, Chicago Title tries to cast its escrow closers as policymakers by alleging that (1) real estate work is amorphous; (2) no existing policy or procedure could account for each particular case; and therefore (3) the closers create new policy and procedure each time they conduct a closing. In other words, Chicago Title claims that escrow closers craft a continually changing "common law" of closing policy. This novel theory finds no support in the record and, in this Court's opinion, far exceeds the scope of any principled or appropriately narrow interpretation of the administration exemption.

or disposition of a case. 912 F.2d at 1069–70. The court explained that "while the regulations provide that 'servicing' a business may be administrative, 'advising the management' as used in [§ 541.205(b) ] is directed at advice on matters that involve policy determinations, *i.e.*, how a business should be run or run more effectively, not merely providing information in the course of the customer's daily business operation." *Id.* at 1070. This Court accordingly disregards Chicago Title's creative vocabulary exercise and again returns to the record evidence detailing the actual duties of the escrow closers. Without belaboring the point, the Court discerns no record evidence by which Chicago Title could carry its burden of demonstrating that the primary duty of the escrow closers is to "service" its business by advising, negotiating, or performing any of the other illustrative tasks.

2. *Substantial Importance:*

■ In addition to distinguishing between administration and production work, the regulations further narrow the administrative exemption by limiting its coverage to "persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers." 29 C.F.R. § 541.205(a). Although that work need not relate to the formulation of management policies or the operation of the business *as a whole* in order to be work of substantial importance to the management or operation of the business, *id.* § 541.205(c), only employees whose work substantially affects the *structure* of an employer's business operations and management may be characterized as "administrative workers," *Cooper,* 940 F.2d at 906.

The regulations acknowledge that no precise rules determine when work becomes of substantial importance to the management or operation of a business. 29 C.F.R. § 541.-205(c)(1) (1993). It is settled, however, that work does not become of substantial importance just because serious consequences

might occur from its improper performance. *Id.* § 541.205(c)(2). Thus, the escrow closers' work is not of substantial importance to the management of Chicago Title or its customers by virtue of the loss potential from mistake or neglect. More importantly, the Court identifies no record evidence through which Chicago Title could establish that its escrow closers affect the *structure* of Chicago Title's operations or those of its customers. As already noted, Chicago Title's reliance on those parts of the affidavits which parrot the regulatory standards is misplaced.

III. *Outside Sales Exemption* [11]

■ The FLSA also exempts from its overtime regulations any person employed as an outside salesman. The regulations define an outside salesman as a person (1) "[w]ho is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business" in making sales; and (2) who does not devote more than 20% of time to activities other than outside sales. 29 C.F.R. § 541.5 (1993). Chicago Title contends that its escrow closers qualify for this exemption because they "physically or telephonically call on company customers to develop orders for service." *Defendant's Memorandum of Law in Support of its Motion for Summary Judgment* (Doc. # 93) at 103. Chicago Title bears the burden of establishing this exemption, which the Court narrowly construes.

The Court is certain that "telephonic calling" does not constitute outside sales, *see* 29 C.F.R. § 541.502(a) (1993), and the Court is not sure that the regulations reach persons who *develop* orders for service, if that term means something other than "obtain." Even so, the Court has scoured Chicago Title's statements of fact for evidentiary support for this proposition and discovered only its statement that the escrow closers promote sales by providing quality service and by attending industry functions. The Court concludes that these contentions fall outside of any

---

11. The DOL limited its motion for summary judgment to the administrative exemption. Chicago Title, however, raised the outside sales exemption in its motion for summary judgment, and the issue has been fully briefed and argued.

Because the Court's analysis exposes Chicago Title's reliance on the outside sales exemption as both factually and legally unavailing, the Court sua sponte directs judgment as a matter of law for the DOL on this issue.

narrow construction of the outside sales exemption as a matter of law.[12]

The Court is similarly unimpressed with Chicago Title's suggestion that the escrow closers qualify under a combination of the administrative and outside sales exemptions. First, the Court has not identified any outside sales activity which could be combined. Second, the regulations expressly provide that an employer who attempts to "tack" exemptions "must meet the stricter of the requirements on salary and non-exempt work." 29 C.F.R. § 541.600 (1993). Thus, Chicago Title may not rely on the short test for the administrative exemption, *see Shockley v. City of Newport News,* 997 F.2d 18, 29 (4th Cir.1993), and its record evidence fails to establish that the escrow closers do not devote more than 20% of their time to non-exempt work.

### IV. *Executive Exemption*

■ A third category of workers exempt from the FLSA's overtime requirements are those employed in a bona fide executive capacity. 29 U.S.C. § 213(a)(1). In its motion for summary judgment, Chicago Title contended that ten individuals identified as branch managers were exempt "executive" employees because they supervised the work or two or more persons working in those branch closing offices. The DOL conceded in its response to Chicago Title's motion that any branch managers who in fact supervised two or more full-time employees or the equivalent would qualify for the executive exemption. However, the DOL disputed that three of those persons—Terry Mincks, Colleen Tuttle, and Betty Jo Zornes—supervised two or more employees during the relevant time periods.

Because the DOL concedes the validity of Chicago Title's legal argument, the Court sustains Chicago Title's motion for summary judgment with respect to the seven branch managers who the DOL does not dispute supervised two or more employees during the relevant time periods. As to the three branch managers specifically identified, however, a genuine factual dispute exists as to

who they might have supervised during certain time periods, which precludes entry of judgment as a matter of law.

**IT IS THEREFORE ORDERED** that *Defendant's Motion for Summary Judgment* (Doc. # 92) be and hereby is **SUSTAINED** in part and **OVERRULED** in part.

**IT IS FURTHER ORDERED** that *Plaintiff's Motion for Partial Summary Judgment* (Doc. # 98) be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that judgment be and hereby is entered for plaintiff that the escrow closers do not qualify for the outside sales exemption or a combination exemption as a matter of law.

**IT IS FURTHER ORDERED** that *Plaintiff's Motion to Strike Affidavits* (Doc. # 114) be and hereby is **OVERRULED.**

---

12. Even if the Court were persuaded that the outside sales exemption contemplated mere attendance at industry functions, Chicago Title presents no evidence sufficient to establish that its escrow closers do so customarily and regularly.