**David GALLEGOS, Plaintiff,**

v.

**EQUITY TITLE COMPANY OF AMERICA, INC. and Netco, Inc., Defendants.**

**No. CIVASA04CA1093FB, SA–05–CA–795–FB.**

United States District Court,
W.D. Texas,
San Antonio Division.

March 28, 2007.

Richard J. (Rex) Burch, Bruckner Burch PLLC, Houston, for the plaintiff.

John B. Renick, William B. Jones, McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, MS, Mark A. Randolph, Horberger Sheehan Fuller & Beiter Inc., San Antonio, for the defendants.

### ORDER ACCEPTING MEMORANDUM AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

BIERY, District Judge.

The Court has considered the Memorandum and Recommendation of the United

States Magistrate Judge filed in the above styled and numbered cause (docket # 5), Defendants' Objections to Memorandum and Recommendation on Motion for Summary Judgment (docket # 61); Response in Support of Judge Primomo's Memorandum & Recommendation (docket # 62) and Notice of Additional Authority Supporting Judge Primomo's Memorandum & Recommendation (docket # 63).

■ Where no party has objected to a Magistrate Judge's Memorandum and Recommendation, the Court need not conduct a de novo review of them. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). In such cases, the Court need only review the Memorandum and Recommendation and determine whether they are either clearly erroneous or contrary to law. *United States v. Wilson,* 864 F.2d 1219, 1221 (5th Cir.), *cert. denied,* 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989).

■ On the other hand, any Memorandum or Recommendation to which there are objections requires de novo review by the Court. Such a review means that the Court will examine the entire record, and will make an independent assessment of the law. The Court need not, however, conduct a de novo review when the objections are frivolous, conclusive, or general in nature. *Battle v. United States Parole Commission,* 834 F.2d 419, 421 (5th Cir. 1987).

The Court has reviewed defendants' objections to the Memorandum and Recommendation, the Defendants' Reply to Plaintiff's Response in Opposition to Motion for Summary Judgment (docket # 57), and has conducted a de novo review of the Magistrate Judge's Memorandum and Recommendation with respect to those matters properly raised by the objections.

*See Memorandum and Recommendation* at pages 19 ("A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections."). The Court finds the objections to the Magistrate Judge's Recommendation are without merit. This Court hereby accepts, approves, and adopts the Magistrate Judge's factual findings and legal conclusions contained in the Memorandum and Recommendation and incorporates herein the arguments and authorities presented by the plaintiff in his Response in Support Of Judge Primomo's Memorandum & Recommendation (docket # 62) and Notice of Additional Authority Supporting Judge Primomo's Memorandum & Recommendation (docket # 63).

Therefore, the Memorandum and Recommendation shall be accepted pursuant to 28 U.S.C. § 636(b)(1) such that Motion for Summary Judgment (docket # 53) filed by the defendants should be DENIED.

Accordingly, it is hereby ORDERED that the Recommendation of the United States Magistrate Judge, filed in this case on July 11, 2006 (docket # 58), is ACCEPTED such that the defendants' Motion for Summary Judgment (docket # 53) is DENIED.

Relying in part on *Martin v. Priba Corp.,* Civ. A. No. 3:91–CV–2786–G, 1992 WL 486911 (N.D.Tex. Nov.6, 1992), the plaintiff asks this Court to grant him summary judgment with respect to Netco's affirmative defense of exemption. Although the court initially granted on its own motion summary judgment for the plaintiff, Secretary of Labor, in that case, that order was vacated because of the "possibility, however slight, that the defendants did not come forward with all of their evidence." *Id.* at *5; *see Relyea v.*

*Carman, Callahan & Ingham, L.L.P.*, 30 Civ. 5580(DRH)(MLO), 2006 WL 2577829 at \*5–6 (E.D.N.Y. Sept. 6, 2006) (finding plaintiffs not exempt employees as matter of law; the defendant's affirmative defense failed and defendants' motion for summary judgment denied; also noting plaintiff did not move for summary judgment and directing parties to submit further briefs). In light of plaintiff's request and the additional case authority submitted by the plaintiff in support of Judge Primomo's Memorandum and Recommendation (docket # 63), the Court will entertain an appropriate motion for summary judgment or letter briefs indicating, as in *Relyea*, what further matters need to be addressed. Should plaintiff desire to file a motion or brief, same shall be filed no later than April 18, 2007. Defendants shall file a response, if any, within the time prescribed by the local rules. If no motion or brief is filed by that date, the case will be set for trial.

It is so ORDERED.

### *MEMORANDUM AND RECOMMENDATION*

PRIMOMO, United States Magistrate Judge.

In these lawsuits, David Gallegos seeks to recover unpaid overtime wages, under the Fair Labor Standards Act (FLSA), earned during his employment with Equity Title Company of America, Inc. and Netco, Inc. Defendants have filed a motion for summary judgment, to which motion plaintiff has responded. (Docket nos. 53, 56). Having considered the motion, the response, the summary judgment, evidence and the applicable law, the Court is of the opinion the motion should be denied.

### *Background*

Gallegos was employed as an escrow officer by Netco, Inc. in San Antonio from January 1998 to August 2001 and from June 2002 to June 2003. From August 2001 to June 2002, he served as the manager of Netco's office in Austin. Netco's customers included mortgage lenders, brokers, and, in some case, real estate brokers. Transactions handled by an escrow officer involved the lending of money by a Netco customer to borrowers against the value of real estate owned by the borrower, either in the form of a home equity loan or refinancing a mortgage, with the customer receiving a title insurance policy from Netco. The escrow officer was in charge of closing the loan from the time a title commitment was issued. This process required an independent investigation to insure clear title, payoffs of other liens and judgments against the borrowers, and a knowledge and ability to resolve issues affecting title to the property. The escrow officer must be responsible for reviewing the loan documents for accuracy. Netco considered escrow officers to be exempt under the FLSA as administrative employees.

Gallegos states that he was one of hundreds of escrow officers who provided closing services for Netco customers. He denies that he managed or supervised anyone, had any involvement in decisions relating to the handling of closings or how the business operation was structured or run, and customarily exercised the requisite level of discretion and independent judgment. For those reasons, Gallegos asserts that escrow officers were not exempt from the FLSA overtime provisions. Gallegos states that, in late 2004, Netco conceded that its escrow closers are not exempt and reclassified these employees, but Netco refuses to pay for overtime worked prior to the reclassification.

### *Standard of Review*

Rule 56(b), Fed.R.Civ.P., provides that a defending party may, at any time, move

with or without supporting affidavits for a summary judgment in the party's favor. Summary judgment shall be rendered if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed.R.Civ.-P. A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the non-moving party's claims or defense or, if the issue is one for which the non-moving party has the burden of proof at trial, merely point out that the evidentiary documents contain insufficient proof concerning an essential element of the moving party's claims. *Id.* at 325, 106 S.Ct. 2548.

The party opposing a motion must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial; if he does not so respond, summary judgment, if appropriate, shall be entered against him. Rule 56(e), Fed.R.Civ.P. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 247–248, 106 S.Ct. 2505. The dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* All of the evidence and inferences drawn from that evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge's function is not to weigh the evidence or determine credibility. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

### Analysis

 The FLSA establishes the general rule that employees must receive overtime compensation at one and one-half times the regular rate for hours worked in excess of 40 hours during a seven-day workweek. 29 U.S.C. Section 207(a). However, this provision does not apply with respect to any employee employed in a bona fide executive, administrative, or professional capacity. 29 U.S.C. Section 213(a)(1). An exempt employee is one whose primary duty consists of office work directly related to management policies or general business operations for the employer or the employer's customers, including work requiring the exercise of discretion and independent judgment. 29 C.F.R. Section 541.2 (2003); *Lott v. Howard Wilson Chrysler–Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir.2000). The decision whether an employee is exempt from the FLSA's overtime compensation provisions is primarily a question of fact; however, the ultimate decision whether the employee is exempt is a question of law. *Lott*, 203 F.3d at 330–31. The employer bears the burden of proving that the employee is exempt from the FLSA general rule. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir.2001).

### A. Relation to Management Policies or General Business Operations

██ The phrase "directly related to management policies or general business

operations of his employer or his employer's customers" refers to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers. 29 C.F.R. Section 541.205(a) (2003). It describes those types of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work. *Id.* The phrase is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. 29 C.F.R. Section 541.205(c). Bank tellers, bookkeepers, secretaries, and clerks are not performing work directly related to management policies or general business operations. 29 C.F.R. Section 541.205(c)(1). The test of "directly related to management policies or general business operations" is met by many persons employed as advisory specialists and consultants of various kinds, credit managers, safety directors, claim agents and adjusters, wage-rate analysts, tax experts, account executives of advertising agencies, customers' brokers in stock exchange firms, promotion men, and many others. 29 C.F.R. Section 541.205(c)(5).

Defendants begin by assuming that little doubt exists that Gallegos performed work directly related to their general business operations. They note that, as a licensed escrow officer, he was responsible for clearing title so that a borrower seeking a loan was properly vested in title on the real estate when the loan was made. By doing so, he served defendants' customers—mortgage lenders, brokers and real estate brokers. Gallegos disputes that his duties were directly related to management policies or general business operations.

Regional Manager Derek Allen testified that an escrow officer obtains a license by filling out an application, being bonded and having a background check, with no previous training or testing. Allen depo., pp. 16–17. Defendants' primary business is its closing service. According to Allen, to perform this service, escrow closers review the title commitment to assure the name of the borrower, the legal description of the property, and the loan amount matches the loan. Id., pp. 19–20. Escrow officer must also check liens and their priority to assure that the lender's lien position is consistent with the closing instructions. Id., pp. 20–21. If closing instructions require a first lien position for the lender, the closer must assure that other liens have been paid off or subordinated. Id., p. 20. The closing instructions from the lender set the guidelines which the escrow officer must assure are met. Id., pp. 24–25. If there are any discrepancies in the information, the escrow officer must contact the borrower or lender. Id., pp. 19 and 21. The escrow officer cannot disregard the closing instruction guidelines. Id.

As between administrative operations of a business and production, the description of the job performed by an escrow officer for defendants is best described as production. Administrative operations of the business include the work performed by so-called white-collar employees engaged in "servicing" a business as, for, example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control. 29 C.F.R. Section 541.705(b). It includes a wide variety of persons who carry out major assignments in conducting the operations of the business. 29 C.F.R. Section 541.705(c). Derek Allen testified that account executives go out "in the field, out on the streets, talking to mortgage brokers, to lenders, going to conventions, networking, joining associations to meet people to do business with Netco." Allen depo., p. 41. Escrow

officers do not fit into that category of employees.

The primary business of defendants is to perform the closing service for its customers. Allen depo., pp. 40–41. Other than in the efficiency in which they performed their duties, escrow officers did not promote defendants' business. They did not carry out major assignments. Their job was to review documents, check for errors, contact the borrower or lender to correct discrepancies, and assure closing instructions were followed. In the escrow closing business, these functions constitute production. The escrow officers duties are not directly related to the management or operation of the business of his employer or his employer's customers.

In *Reich v. Chicago Title Ins. Co.*, 853 F.Supp. 1325 (D.Kan.1994), the District Court considered whether escrow closers were administrative personnel and, thus, exempt from the overtime requirements of the FLSA. The Court ultimately found that escrow closers were not exempt. It is interesting to compare the duties performed by an escrow closer in *Reich* with the duties of defendants' escrow officers. In *Reich*:

Escrow closers have direct contact with the Company's customers and forward the requests for title insurance from the customers. The closer quotes the fee for title insurance. The escrow closer also responds to pertinent questions which may arise through the closing transaction. The closer prepares the buyer's and seller's closing statements and insures that all closing documents are properly prepared. The closer sets up a closing appointment, and follows up with the customers to insure that the transaction is progressing to completion. The closer supervises the execution of the closing documents and prepares the closing statements. The closer receives and receipts money from the buyer and examines the closing file to insure that the lending agent's requirements have been satisfied. The closer orders the loan check, updates the closing file and determines the appropriate tax payoff. The closer receives and disburses the loan funds from the lending agent. The closer's duties include maintaining the file for release of liens and, if a payoff has been ordered, reviewing the file to insure that all money has been disbursed and taxes have been paid. Upon closure of the file, the closer disburses all funds to seller, lender, realtor and other appropriate parties. Finally, the closer provides the recorded deed and title policy to the buyer and follows-up with the Company's customer. As part of the above process, the closer also conducts a closing conference in almost all instances.

The closer sends out recording packages, returns loan packages to the lenders, orders payoffs, orders termite inspections, checks on home association dues, types contracts, returns recorded documents to lenders, to sellers and to buyers, and sends other documents, such as releases, to be recorded.

853 F.Supp. at 1327–28.

In finding that these duties constituted production, rather than administrative work, the District Court in *Reich* cited and agreed with the decision of the Fifth Circuit Court of Appeals in *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1230 (5th Cir. 1990), which described the distinction drawn by Section 541.205(a) as between those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market. *Reich*, 853 F.Supp. at 1330. The District Court then concluded that the primary

duty of the escrow closers was to carry out the day-to-day closing operations of the employer. *Id.* It noted that, in their handling of escrow files and administration of closing services, escrow closers, at most, applied existing policies and procedures on a case-by-case basis. *Id.*

A determination that the duties of defendants' escrow officers do not directly relate to the management or operation of the business of defendants or their customers is even more compelling than in *Reich* when the respective duties are compared. The duties of the escrow closer in *Reich* were more extensive and detailed than in this case. The job functions performed by defendants' escrow officers are more limited. Also as noted in *Reich,* the duties of an escrow closer was not work of substantial importance to the management or operation of the business because it does not substantially affect the structure of the business operations. 853 F.Supp. at 1332. Defendants' escrow officers did not perform work of substantial importance to the administration of defendants' business. The Court concludes that defendants have not satisfied their burden of proving the first requisite for a finding that their escrow officers occupied administrative positions and, thus, were exempt from payment of overtime under the FLSA.

### 2. *Exercise of Discretion and Independent Judgment*

■ To constitute administrative employees, their job duties must also involve the exercise of discretion and independent judgment. The term "discretion and independent judgment" implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance. 29 C.F.R. Section 541.207(a)(2003). It does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete

absence of review. 29 C.F.R. Section 541.207(e)(1). The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. Id. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment. Id.

The Court finds that defendants have also failed their burden of establishing that this element has been met. In support of their argument that Gallegos exercised discretion and independent judgment, defendants note that he was an experienced escrow officer, that escrow officers were required to recognize, understand and resolve legal issues and impediments to passage of clear title, resolve discrepancies, prepare an accurate HUD settlement statement, and could waive a relatively small payoff and some escrow fees to clear title and consummate the closing. Other than the latter authority, which was a minor part of the escrow officer's duties, none of these duties involved the exercise of discretion. Gallegos was bound to follow set guidelines and instructions in determining if clear title could be transferred at closing-guidelines and instructions he was bound to follow. Certainly, as an experienced escrow officer, Gallegos applied his knowledge and skill to his work. However, an employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices, is not exercising discretion and independent judgment. 29 C.F.R. Section 541.207(c)(1).

As described by Derek Allen, Gallegos' job functions were mechanical. In his deposition, Allen was asked to cite an example of a decision made by an escrow officer. He testified that, if two people are on the title and only one appears at the closing, the escrow officer had to decide whether to proceed with the closing or stop the closing because the signatures of both parties are necessary. Allen depo., pp. 90–92. That "decision" is simply a matter of following the requirement that both parties' signatures are necessary. No independent judgment is exercised. Allen also testified that the escrow officer must determine if there is a judgment on the title that must be paid off. Allen depo., p. 93. Allen stated that an escrow officer could determine if a judgment lien was too old to affect passage of clear title but acknowledged that whether a judgment is too old to cloud the title depends upon a time period set by law. Id., pp. 94–95. Gallegos testified that he could not make the decision to proceed if title was not clear. Gallegos depo., pp. 56–57. When the closing process stopped because of a lien problem, the borrower or the broker were contacted. Id., p. 57. The *Reich* court referred to the defendant's references to "servicing," "advising," "representing," and "promoting" as a "creative vocabulary exercise." *Reich*, 853 F.Supp. at 1332. Defendants' attempt to characterize the duties of their escrow officers as exercising decision-making also elevates the importance of those functions above reality. The Court finds that Gallegos did not exercise discretion and independent judgment in performing his duties as an escrow officer.

The Court also finds that, to the extent Gallegos was permitted to exercise discretion in minor matters to waive certain escrow fees or small judgments, he did not do so regularly. To constitute an administrative employee, the person must *customarily and regularly exercises discretion and*

*independent judgment.* 29 C.F.R. Section 541.2(b). Allen testified that he had no idea how often Gallegos waived the escrow fee at closing. Allen depo., pp. 97. Defendants have also failed to show that their escrow officers waived small judgments on a regular basis. The Court concludes that defendants have not met their burden of establishing that their escrow officers are administrative personnel and, thus, exempt from FLSA overtime requirements.

The Court has reviewed the findings and conclusions of United States District Judge William Terrell Hodges, dated March 27, 1997, in *Brown v. Equity Title Company/Southeast and William Baumgart,* cause no. 96–4–Civ–JB(H) from the Middle District of Florida. Statement of Uncontroverted Material Facts, Dignam aff., exh. A. Defendants represent that the facts in that case, in which Judge Hodges ruled that defendants' escrow officers were exempt as administrative personnel, are virtually identical to those before the Court. That Court did not discuss detailed evidence demonstrating that the duties of escrow officers were directly related to management policies and business operations. It determined that *Reich v. Chicago Title Ins. Co.* should be distinguished because title insurance was not always provided in that case. While acknowledging that this may be an insignificant point, Judge Hodges then found that the distinction was important in light of the requirement that, to be considered administrative staff, the closers had to exercise discretion and independent judgment. Judge Hodges concluded that the escrow closers worked administratively on the general business operations and, in the process of so doing, customarily and regularly exercised discretion and independent judgment. The possible consequences to the employer if an escrow closer made a mistake was an important factor in the

Court's determination. For the reasons discussed above, this Court respectfully disagrees with Judge Hodge's analysis and decision.

### 3. Statute of Limitations

■ Defendants next argue that Gallegos' claim is barred by the applicable statute of limitations. Suits for unpaid overtime compensation under the FLSA must be filed within 2 years unless the defendant acted willfully, in which case the limitations period is 3 years. 29 U.S.C. Section 255(a). Defendants note that Gallegos sued Netco Inc., a Texas Corporation on December 1, 2004, cause no. SA–04–CA–1093–FB. On January 3, 2005, he amended his complaint, naming as the defendant Netco Title Inc., an Illinois Corporation, d/b/a Netco, Inc. Thereafter, on August 19, 2005, Gallegos sued Netco, Inc., a Texas corporation, and Equity Title Company of America in cause no. SA–05–CA–0795–FB. On September 21, 2005, Gallegos filed a second amended complaint in cause no. SA–04–CA–1093–FB naming the defendant as Netco, Inc. d/b/a Netco Title Inc. and Netco, Inc. Defendants argue that the second amended complaint cannot relate back to the date of the filing of the original lawsuit as far as Netco is concerned. They state that Gallegos has no evidence of a willful violation, and that his claims for overtime compensation between August 20, 2002 and June 2003 are barred because the second amended complaint was filed more than 2 years after the latter date.

■ Netco Title Inc. previously filed a motion to dismiss asserting Gallegos was never an employee of Netco Title, Inc., an Illinois corporation, d/b/a Netco, Inc. The motion was based solely upon the fact that Gallegos improperly named the defendant corporation and is "confused about the identity of the employer for whom he worked in Texas." This issue was previ-

ously addressed and resolved by the Court. (Docket no. 32). Based upon evidence submitted, in particular the admissions of Patrick Dignam, general counsel for Equity Title Company of America, this Court found that Gallegos should be permitted to file the second amended complaint to accurately reflect the name of the corporation for which Gallegos worked while in Texas. The Court further found that the amendment would relate back to the date of the original pleading pursuant to Federal Rule of Civil Procedure 15(c)(3). Defendants provide no basis for altering this ruling.

### 4. Liquidated Damages

■ Under the FLSA, an employer who violates the overtime provisions is liable not only for the unpaid overtime compensation, but also for "an additional equal amount as liquidated damages." 29 U.S.C. Section 216(b). This liquidated damages assessment is no longer mandatory; the district court can now decline to award such damages (or reduce the amount) if the court concludes that the employer acted in "good faith" and had "reasonable grounds" to believe that its actions complied with the FLSA. 29 U.S.C. Section 260. An employer faces a substantial burden of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA. *Singer v. City of Waco, Texas,* 324 F.3d 813, 823 (5th Cir.2003).

As evidence that they acted in good faith and had reasonable grounds for believing their actions complied with the FLSA, defendants cite the *Brown* decision discussed above. Defendants assert that *Brown* involved almost identical facts and resulted in a ruling that escrow officers were administrative personnel and, thus, exempt from the FLSA overtime provisions. They also note that the Department of Labor conducted an investigation of Netco for the

period April 6, 2001 to April 5, 2003 and did not find that escrow officers could not be treated as administrative personnel.

 Several reasons militate against a finding as a matter of law that defendants acted in good faith and with reasonable grounds to believe they complied with the law. In response, Gallegos points out that Netco received complaints from their escrow officers about the failure to pay overtime. He testified that he was told by Vice President Dave McNeil that Netco settled a claim by an escrow officer in Florida seeking overtime compensation. Gallegos depo., p. 22. Also, as Gallegos notes, the *Reich* decision was rendered in 1994, placing Netco on notice that at least one court viewed escrow closers as non-exempt employees. Gallegos also cites to various treatises identifying escrow closers as non-exempt. Finally, the Department of Labor investigation of Netco found violations of the FLSA overtime provisions. Statement of Uncontroverted Material Facts, Dignam aff., exhs. B and C. Further, it does not indicate that the Department of Labor investigated whether defendants' escrow officers were administrative personnel. What constitutes good faith on the part of an employer and whether the employer had reasonable grounds for believing that its act or omission was not a violation of the FLSA are mixed questions of fact and law. *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1566 (11th Cir.1991). Whether Netco acted in good faith and with reasonable grounds for believing it acted in conformity with the FLSA must be determined at trial. The summary judgment evidence does not permit a finding on this issue as a matter of law.

### Recommendation

It is, therefore, the recommendation of the Magistrate Judge that defendants' motion for summary judgment be **DENIED**.

### Instructions for Service and Notice of Right to Appeal/Object

The United States District Clerk shall serve a copy of this United States Magistrate Judge's Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Pursuant to Title 28 U.S.C. Section 636(b)(1) and Rule 72(b), Fed.R.Civ.P., any party who desires to object to this report must serve and file written objections to the Memorandum and Recommendation within 10 days after being served with a copy unless this time period is modified by the district court. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. *Such party shall file the objections with the Clerk of Court and serve the objections on all other parties and the Magistrate Judge.* A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation contained in this Memorandum and Recommendation within 10 days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services*

*Automobile Association,* 79 F.3d 1415, 1428–29 (5th Cir.1996).